*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 16-FM-991

E.P.L., APPELLANT,

V.

J.L.-A., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DRB-1013-16)

(Hon. Michael K. O'Keefe, Trial Judge)

(Submitted December 12, 2017          Decided August 9, 2018)

*Randy J. Prebula*, *Sean Marotta*, and *Laura N. Ferguson* were on brief, for appellant.

No brief was filed on behalf of appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, EASTERLY, *Associate Judge*, and FERREN, *Senior Judge*.

EASTERLY, *Associate Judge*: E.P.L.[1] (hereinafter "M.L.P.'s mother")

appeals from a Superior Court order declining to make the requisite findings for

---

[1] "As is customary in appeals involving juvenile matters, we use here the initials of the minor and the parties." *J.U. v. J.C.P.C.*, 176 A.3d 136, 138 n.1 (D.C. 2018).

her daughter M.L.P. to qualify for Special Immigrant Juvenile Status (SIJS or SIJ status) pursuant to 8 U.S.C.A. § 1101 (a)(27)(J) and 8 C.F.R. § 204.11 (c)(1), (2). Specifically, she challenges the court's asserted inability under the requisite SIJS criteria to find both that reunification of M.L.P. with her biological father is not viable due to abandonment, and that it is not in the best interest of M.L.P. to return to her country of origin, Guatemala. M.L.P.'s father has never contested M.L.P.'s mother's arguments.[2] We agree with M.L.P.'s mother that, on the record before us, such findings are mandated. *See J.U. v. J.C.P.C.*, 176 A.3d 136, 138 (D.C. 2018) (likewise concluding that SIJS findings were mandated on the record established in Superior Court).

## I.

M.L.P. was born in Guatemala in October 2009. It is unclear if her father ever lived with her, but it is undisputed that he left Guatemala when she was six months old and did not see her again until 2016, when the court proceedings that

---

[2] M.L.P.'s father, J.L.-A. (hereinafter "M.L.P.'s father") appeared pro se in the Superior Court, but has not joined this appeal. M.L.P.'s mother attempted to serve her brief on him, but it was returned marked "return to sender, unable to forward," and he did not respond to this court's scheduling order giving him the timeframe within which to file a brief.

are the subject of this appeal began. M.L.P.'s mother left Guatemala in 2012 and travelled to the United States, placing M.L.P. in the care of her sister, M.L.P.'s aunt, until M.L.P.'s mother could afford to pay for her sister to bring M.L.P. to the United States. M.L.P. illegally entered the United States in 2014 and was taken into custody by the United States Customs and Border Protection Agents. Mother and daughter were reunited after M.L.P.'s mother was designated M.L.P.'s sponsor by the Department of Homeland Security Office of Refugee Resettlement. In March 2016, M.L.P.'s mother filed a complaint for sole custody of M.L.P., and a motion for factual findings to support M.L.P.'s petition for Special Immigrant Juvenile Status, both of which she served on M.L.P.'s father, who was then residing in Pennsylvania. After failing to respond to M.L.P.'s mother's complaint for custody, M.L.P.'s father avoided default by appearing in court on the day of the scheduled April hearing and, although he conceded that he had not seen then-six-year-old M.L.P. since she was an infant, requested shared custody. The court continued the case for two months but directed the parties to go to the Superior Court Supervised Visitation Center in the meantime so that M.L.P.'s father, as a first step, could begin supervised visitation.

At the next hearing, in June, M.L.P.'s father failed to appear in person, but

the court secured his appearance by telephone.[3] M.L.P.'s father confirmed that he had not visited with M.L.P. since the initial hearing. After an off-the-record conversation, the parties reached an agreement as to custody, and the court entered an order awarding sole legal and primary physical custody of M.L.P. to her mother. With respect to M.L.P.'s SIJS motion, counsel for M.L.P.'s mother represented to the court that M.L.P.'s father was "willing to consent that he previously abandoned" M.L.P. The parties agreed that they could address the SIJS motion at a separate evidentiary hearing, and the court continued the case until August 24, 2016.

M.L.P.'s father and mother both appeared in person at the SIJS hearing, as did M.L.P. Although two more months had elapsed, M.L.P.'s father acknowledged that he still had not visited his daughter and it appeared that, when the court proceeding commenced, he had not yet introduced himself to her.

Before the court was M.L.P.'s mother's motion and attached affidavits in which she argued that M.L.P. qualified for SIJS because she met all the statutory

---

[3] M.L.P.'s father explained that he had not come to court (1) because he had had an accident at some earlier time and since then had been too nervous to drive and (2) because he did not have the money for gas.

factors, specifically, (1) she was under the age of 21 and unmarried; (2) she had been placed in the custody of another individual in the United States (her mother) pursuant to a court order; (3) her reunification with one of her parents, her father, was not viable due to abandonment; and (4) it was not in her best interest to be separated from her mother and to return to Guatemala. M.L.P.'s father never filed a response or otherwise contested the mother's allegations. Even so, the court noted at the start of the hearing that it had "problems" with the motion because, in the court's view, it did not "seem like typical facts that would qualify for a[] SIJS."

M.L.P.'s mother took the stand and testified consistently with the representations in her motion and in her affidavit that M.L.P.'s father had been abusive, had abandoned her and M.L.P. in Guatemala when M.L.P. was an infant, and had provided them with no financial support since. She further testified that M.L.P. would not be able to identify the father "if she saw him on the street" and that since M.L.P. had come to the United States, the father had made no effort to "meet with or visit" M.L.P. Lastly, M.L.P.'s mother testified that M.L.P. was thriving in her care in the United States and that if M.L.P. were sent back to Guatemala she would have no one to care for her.[4]

---

[4] This testimony prompted the court to ask M.L.P.'s mother why she could not return to Guatemala with M.L.P. M.L.P.'s mother explained that she could not

(continued…)

The court then asked M.L.P.'s father if he had any "comments" or "questions" for your wife."[5]  M.L.P.'s father appeared not to understand the purpose of the proceeding and indicated that he thought it was a continuation of the custody matter.  He stated that when M.L.P.'s mother had first come to the United States without M.L.P., he and she had "lived in the same house for three months";[6] after they separated, he was "never able to speak to [his] daughter again and [he is] not bothered by this," and that he would "sign the papers for the custody of the baby."  Focusing on the question of abandonment, the court asked whether he had provided any financial support to M.L.P.  He testified that he "would like to" and vaguely asserted that he had done so when she was in Guatemala.  But he then agreed that he had "abandoned and neglected" M.L.P. "these past three years, yes." He further conceded that "in the last four months since [he had] known where" M.L.P. was, he had not provided her any support, nor had he tried to do so;

_____

(…continued)
return because of the "threats of those people who beat me when I was there." M.L.P.'s mother's counsel immediately noted, however, that her reasons for moving to the United States were not part of the SIJS inquiry. *Infra* n.16.

[5]  The trial court also granted the parties a divorce as part of this proceeding.

[6]  This testimony is inconsistent with M.L.P.'s father's later statement to the court in which he agreed that "everything [M.L.P.'s mother had] said [was] correct," after she informed the court as part of the divorce inquiry that the parties had not cohabitated since 2010.

similarly, he admitted that he had not visited M.L.P. nor had he tried to do so.

In closing, counsel for M.L.P.'s mother focused on the question of abandonment and argued that the court should determine that reunification of M.L.P. with her father was not viable because he had abandoned her.[7] M.L.P.'s father made no closing argument.

In its subsequently issued written SIJS findings, the court determined that M.L.P. met the first two SIJS criteria: (1) she was under the age of 21 and unmarried; and (2) she had been placed in the custody of another individual, her mother, pursuant to a court order. But the court concluded that M.L.P. did not satisfy the third and fourth criteria because (3) she was not an abandoned child (the court instead noted she had been reunified with her mother), and (4) even though the court determined it was in M.L.P.'s best interest to remain in the care and custody of her mother, there was insufficient evidence to find that it was not in

---

[7] Counsel cited D.C. Code § 16-2316 (d)(1)(C) (2012 Repl.) (statutory inference of neglect based on abandonment where parent is known but "has made no reasonable effort to maintain a parental relationship with the child for a period of at least four (4) months") and argued that the court could either conclude that M.L.P.'s father had abandoned her since infancy or in the last four months. At one point, however, the court expressed confusion and indicated that it thought counsel was citing to the foundling statute, D.C. Code § 16-2316 (d)(1)(A) (2012 Repl.).

M.L.P.'s best interests to return to Guatemala. This appeal followed.

## II.

The issues before this court are legal in nature. Specifically, we have been asked to assess whether the court correctly analyzed the question of abandonment and the sufficiency of the evidence that it was not in M.L.P.'s best interest to return to Guatemala, both in the SIJS context. Thus, our review of the court's order is de novo. *See In re C.G.H.*, 75 A.3d 166, 171 (D.C. 2013).

As we explained in *J.U. v. J.C.P.C.*, "[u]nder the immigration laws of the United States, an immigrant juvenile, or someone acting on their behalf, may petition for SIJ status," which would allow them to reside in this country legally. 176 A.3d at 138. The requisite findings for SIJ status are made by state courts which are then attached to a petition submitted to the United States Citizenship and Immigration Services (USCIS). *See id.* at 139. A court reviewing a motion for factual findings to support a SIJS petition must ensure that the juvenile satisfies four criteria:

(1) the juvenile is under the age of twenty-one and unmarried;[8]

(2) the juvenile "has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States";[9]

(3) the juvenile's "reunification with 1 [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;"[10] and

(4) "it would not be in the [juvenile's] best interest to be returned to the [juvenile's] or parent's previous country of nationality or country of last habitual residence[.]"[11]

In the case before us, the court determined that M.L.P., then age six, satisfied the age and marital status criterion, as well as the "court-involvement" criterion because she had been placed in the custody of her mother pursuant to a court order. *See J.U.*, 176 A.3d at 139 (quoting the USCIS policy manual and explaining that with the amendment to the statute in 2008, juveniles "do not need to be eligible for or placed in foster care and that they may be reunified with one parent or other family members"). Thus, the only question on appeal is whether M.L.P. also satisfied the third and fourth SIJS criteria.

---

[8] 8 C.F.R. § 204.11 (c)(1), (2). As noted in *J.U.*, 176 A.3d at 138 n.3, the remainder of this regulation has not been updated to reflect amendments to the statute in 2008.

[9] 8 U.S.C.A. § 1101 (a)(27)(J)(i).

[10] *Id.*

[11] 8 U.S.C.A. § 1101 (a)(27)(J)(ii).

A juvenile satisfies the third SIJS criterion if "reunification with 1 [one] . . . of the immigrant's parents is not viable due to abuse, neglect or abandonment." 8 U.S.C.A. § 1101 (a)(27)(J)(i). As we acknowledged in *J.U.*, abandonment has "several definitions" in the D.C. Code, "depending on the context in which the determination is being made[,]" citing neglect and adoption proceedings as examples. 176 A.3d at 140 (citing D.C. Code §§ 16-2316 (d)(1)(C) and -304 (d)).[12] We distinguished these contexts from motions for SIJS findings, where the question is not whether a juvenile without legal status "has been neglected or abandoned" by a parent in the "abstract," but rather whether reunification of that juvenile with one or both of her parents is not "viable due to abandonment." *Id*. Assessing the viability of reunification "calls for a realistic look at facts on the ground," *id*., and a focus on "the parent's past conduct [to determine] . . . the workability or practicability[,] of a forced reunification of parent with minor, if the minor were to be returned to the home country." *Id*. at 141.

---

[12] M.L.P. expresses concern that the court, in analyzing the issue of abandonment, relied on D.C. Code § 16-2316 (d)(1)(A), the abandonment standard for foundlings. Although the court mentioned this specific provision at the hearing, it ultimately found the provision inapplicable to M.L.P.'s circumstances in its order and cited more generally to D.C. Code § 16-2316 (d).

Examining the question of abandonment from this distinct perspective, we conclude that, much as in *J.U.*, the court "applied too demanding a standard of both viability and abandonment" in this case. *Id.* at 142 (internal quotations omitted). First, the court seemed to conclude that "[M.L.P.] is *not* a neglected, abused, or abandoned child" because "reunification [of M.L.P.] with at least one of [her] parents," her mother "has been achieved," notwithstanding that the statute only requires proof of abandonment by one parent. Thus it was immaterial that M.L.P. was living with her mother; the question for the trial court was whether she had been abandoned by her father such that reunification with him was not viable.[13] *See USCIS Policy Manual*, Vol. 6, Part J. Ch. 2 § D (1) ("A qualifying court-appointed custodial placement could be with one parent, if reunification with the other parent is found to be not viable due to that parent's abuse, neglect, or abandonment of the petitioner.").

---

[13] *See also De Guardado v. Menjivar*, 901 N.W.2d 243, 249 (Minn. 2017) (acknowledging that the "USCIS[] has interpreted the present form of the SIJ statute and indicated that the custodial placement" of a juvenile with one parent due to abandonment by the other "may be sufficient for the purposes of a[] SIJ dependency/custody finding"); *In re Marcelina M.-G. v. Israel S.*, 112 A.D.3d 100, 111 (N.Y. App. Div. 2013) (finding the child eligible for SIJS "even while the child remains in the care of the other parent") (internal quotation marks omitted).

As to whether reunification of M.L.P. with her father was viable, the court determined that it was not, but only because of "the custodial arrangement agreed upon by the parties"—not because M.L.P.'s father had abandoned her. The custody order, however, simply acknowledged as a legal matter the "realistic . . . facts on the ground," 176 A.3d at 140, namely that M.L.P.'s father was a stranger to his then six-year old daughter because he effectively abandoned her when she was in her infancy. More to the point, the undisputed evidence established that M.L.P.'s father had left M.L.P. behind in Guatemala when she was six months old, had not supported her after she came to the United States, and even during the pendency of the proceedings had not exercised his right to visitation to meet M.L.P. to attempt to establish a relationship with her. Considering "the lifelong history"—or lack thereof—between M.L.P. and her father, and employing the "common-sense practical workability" perspective required in the SIJS context, reunification of M.L.P. with her father was not "viable" due to abandonment. *Id.* at 140.

The court's predicate factual findings do not support a different conclusion with respect to its findings regarding the third SIJS criterion. The court found that M.L.P.'s father had been unable to visit with her during the pendency of the case "allegedly due to transportation problems" and that he "would like to have a

relationship with" her but had been stymied from doing so over the years because his inquiries to learn her whereabouts were unsuccessful. Setting aside that the court's findings are at least in tension with other aspects of M.L.P.'s father's testimony,[14] these findings—although relevant to any inquiry about whether M.L.P.'s father had grasped his opportunity interest or neglected or abandoned M.L.P. in the family law sense—do not pertain to the distinct abandonment inquiry this court has endorsed for the purposes of SIJS cases. *See id.* at 143 (concluding that sending the juvenile "back to the care of a father who has never fulfilled any day-to-day role in the support, care, and supervision during the boy's lifetime cannot be a 'reunification' that is 'viable,' that is, 'practicable; workable,' and such a conclusion is due to 'abandonment' evidenced by the record here in its relation to the viability of reunification").

Turning to the fourth SIJS criterion, whether it would be in M.L.P.'s best interest to return to Guatemala, the court stated that "there is insufficient evidence to find that it is not." The court misunderstood the analysis and its conclusion did not comport with the record evidence. Having determined that "[t]he evidence

---

[14] Among other things, M.L.P.'s father conceded that he had abandoned M.L.P. at least for "these past three years," and testified that he was "not bothered by" his lack of contact with his daughter.

indicates that it is in the minor child's best interest to remain in the care and custody of her mother, wherever that may be,"[15] the only logical legal conclusion was that it is not in M.L.P.'s best interest to be returned to Guatemala, where, according to the mother's testimony, M.L.P. would have no one to care for her.[16]

Accordingly, we vacate the court's Special Immigrant Juvenile Status Findings and remand this case to the court to enter amended findings consistent with this opinion.[17]

---

[15] *See In re Ta.L.*, 149 A.3d 1060, 1083 (D.C. 2016) (en banc) ("[A] child's best interests are presumably served by being placed with his or her fit natural parent.").

[16] The court's finding "that the family made a conscious decision to emigrate to the United States," is unsupported by the evidence. There was no testimony that M.L.P.'s father and mother decided, as a family, to move to the United States. The undisputed evidence was that they each left Guatemala separately and years apart. The record is silent as to why the father left, while the mother indicated that she fled for her personal safety. Lack of record evidence aside, the reason(s) or methods by which either parent of a SIJS applicant might be in the United States is simply not relevant to the SIJS inquiry. *See* 8 U.S.C.A. § 1101 (a)(27)(J)(i)-(ii); *In re Alan S.M.C.*, 160 A.D.3d 721, 722-23 (N.Y.S.2d 2018) ("Contrary to the [trial] court's determination, the mother was not required to demonstrate that she has 'legal status in this country' or has taken steps to obtain such status to qualify as a guardian [for SIJS purposes].").

[17] We note that courts in other states use mandatory fillable form orders for SIJS findings. *See, e.g.*, Cal. Jud. Council Form FL-357 (Rev. July 1, 2016); N.Y. Comp. Codes R. & Regs. tit. 22, § Subt.D, Ch.IV, Subch.A, Form 42 (2018); Washington State Court Forms, JU 11.0500 (rev. June 2018), https://www.courts.wa.gov/forms/?fa=forms.contribute&formID=46. It may be
(continued…)

*So ordered.*

---

(…continued)
that development of a similar order would be helpful to the Superior Court both to guide the court's analysis and to facilitate the disposition of these motions. *See e.g.*, Cristina Ritchie Cooper, A Guide for State Court Judges and Lawyers on Special Immigrant Juvenile Status, 36 No. 2 Child L. Prac. 25, 33 (ABA 2017) (explaining that a SIJS order need only contain "brief, illustrative facts that reflect [the trial court's] informed decisions about the child in the case before the court").