*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-FM-929

GLENDA DEL CARMEN BENITEZ, APPELLANT,

v.

JOHN DOE, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DRB-4307-15)

(Hon. Hiram E. Puig-Lugo, Trial Judge)

(Submitted June 29, 2017                    Decided September 6, 2018)

*Michael E. Zielinski* was on the brief for appellant.

No brief was filed for the appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and WASHINGTON, *Senior Judge*.

WASHINGTON, *Senior Judge*: In 2013, J.V.B., the minor at the center of this appeal, illegally entered the United States as an unaccompanied minor from El Salvador to join her mother ("the mother" or "appellant"), who has been a resident of this country since 2005. On appeal, the mother challenges the trial court's April 26, 2016, and May 26, 2016, orders denying her motion for a Special Immigrant

Juvenile ("SIJ") Status finding pursuant to the requirements of 8 U.S.C. § 1101 (a)(27)(J) (2009 Supp. II).  In light of the record before us, we agree with the mother that such a finding is mandated.

## I.   The Trial Court's Ruling

J.V.B. was born on May 31, 2004, in El Salvador and lived with her mother and maternal grandmother for the first year of her life.  In 2005, J.V.B.'s mother moved to the United States, where she has since resided with J.V.B.'s two half-siblings.  Prior to her departure, the mother arranged for J.V.B.'s maternal grandmother to care for J.V.B.  In the years they lived apart, the mother sent the maternal grandmother $100-150 every fifteen days to support J.V.B., and spoke on the phone with J.V.B. "two or three times a week."

At the time of J.V.B.'s conception, the mother was approximately eighteen years old and had been in a relationship with Walter Alvarado for four to five months.  The mother believed Mr. Alvarado was J.V.B.'s father, though Mr. Alvarado never expressed any interest in parenting her.[1]

---

[1]  For approximately twelve years, both the mother and Mr. Alvarado's sister believed Mr. Alvarado was J.V.B.'s father.  In her declaration, the mother attested

(continued…)

In 2012, while residing in the United States, the mother was assaulted by the brother of her former boyfriend. After reporting the assault to the police, the mother's former boyfriend informed the mother that "he knew [she] had family in El Salvador and, if his brother was deported," her family "would pay for it." The mother interpreted his comments "as a threat to do physical harm to her family in El Salvador." In 2013, due to these threats, as well as general gang activity that threatened the safety of J.V.B., J.V.B. came to the United States to live with her mother where she has resided since her arrival.

Based on the belief that Mr. Alvarado was J.V.B.'s biological father, the mother initiated a custody action in Superior Court, naming Mr. Alvarado as the defendant. After receiving notice of the proceedings, Mr. Alvarado "questioned that he was the father" of J.V.B., and a subsequent "paternity test reportedly excluded him as the father." The mother attested that she initially "wanted the test repeated, in a process that would ensure that all test participants were present and provided samples at the same time," as she was "shocked by the test result."

---

(…continued)
that Mr. Alvarado's sister "came to [J.V.B.'s] Christening, and visited her several times a year." Mr. Alvarado also "met with [J.V.B.] briefly after she came to the United States, and made statements to her which she interpreted as acknowledging that he was her father."

However, after reviewing "pictures taken of the participants when samples were given," she "decided not to challenge the test result." Because Mr. Alvarado was excluded as J.V.B.'s biological father, the trial court dismissed the first custody action without prejudice.

J.V.B.'s mother subsequently initiated the instant case against John Doe by filing a verified complaint for custody in the Superior Court seeking sole physical and legal custody of J.V.B., as well as a Motion for Special Immigrant Juvenile Status Predicate Order. After Mr. Alvarado was excluded as J.V.B.'s father, the mother sought to serve "John Doe" by posting because "despite her best diligent efforts, the identity of [J.V.B.'s] biological father and his last known place of residence [were] unknown." On February 22, 2016, Judge Michael O'Keefe of the Superior Court granted the mother's motion and ordered that the "notice shall be posted in the Clerk's Office of the Family Division of the Superior Court of the District of Columbia for a period of twenty-one calendar days in order to serve" John Doe. In granting the motion, the trial court explained that it "may authorize service by publication or posting when the plaintiff has shown that diligent efforts to locate the defendant are futile." Because the development from the recent DNA testing of Mr. Alvarado "was unexpected," and "in light of the distance in time and location of the minor child's conception in El Salvador," the trial court determined

that service by posting was the appropriate course of action to ensure John Doe received notice. The Clerk of the Court subsequently entered a default judgment against John Doe for his failure to respond.

After a hearing before Judge Hiram Puig-Lugo, during which both J.V.B. and the mother testified, the trial court granted the mother sole physical and legal custody of J.V.B. As to the requested SIJ status findings, the trial court concluded that J.V.B. had satisfied some of the conditions imposed by the statute, including: (1) that J.V.B. was under the age of twenty-one years and unmarried at the time of her SIJ status petition; (2) J.V.B. was placed, pursuant to an order of the juvenile court, in the sole legal and physical custody of her mother; and (3) it was not in J.V.B.'s best interest to be returned to El Salvador because J.V.B. "resides with her mother, the only parent she knows, who is able to provide" for her. The trial court, however, found that J.V.B. failed to meet the final condition required for SIJ status eligibility: that although reunification with J.V.B.'s father "is not possible, there is no evidence that the lack of viability is due to abandonment." The mother timely appealed the trial court's denial of her SIJ status request.[2]

---

[2] On May 9, 2016, the mother filed a Motion for New Trial, contending that the April 26, 2016 order was "based on errors of fact and law." The trial court denied that motion shortly thereafter in a May 26, 2016, order, concluding that the mother had "misstate[d] the basis of the court's finding" in arguing that

(continued…)

## II. Abandonment Under "State" Law

The SIJ statute provides, in relevant part:

> [A special immigrant juvenile is] an immigrant who is present in the United States—(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status[.]

8 U.S.C. §§ 1101 (a)(27)(J)(i)-(iii). After hearing testimony from both the mother and J.V.B., the trial court determined that J.V.B. had presented "no credible evidence that [she] has been abused, neglected or abandoned by" her biological father, and that "while there is evidence that reunification with [J.V.B.'s] father is

---

(…continued)

"knowledge of parenthood is not a prerequisite of a finding of abandonment." According to the trial court, it had, in fact, "found that it was unreasonable to expect [J.V.B.'s] father to make any efforts to maintain a parental relationship when he was unaware of her existence." The mother subsequently appealed the May 26, 2016, order, in conjunction with the April 26, 2016, order.

not possible," J.V.B. had failed to present any "evidence that the lack of viability is due to abandonment or neglect." The court reasoned that "in order to abandon a child, a parent must know he is a father." Thus, because paternity was unknown, it was impossible "for [J.V.B.'s] father to have made reasonable, or indeed any, efforts to maintain a parental relationship when he was unaware of her existence."

In concluding that John Doe had not abandoned J.V.B., the trial court viewed abandonment, at least in part, in the context of termination of parental rights, as evidenced by his May 26, 2016, order. *See, e.g.*, *In re M.N.M.*, 605 A.2d 921, 926-27 (D.C. 1992) (putative father's due process rights violated in termination of parental rights proceeding); *In re H.R. (Baby Boy C.)*, 581 A.2d 1141, 1162-63, 1166 (D.C. 1990) (same). However, in *J.U. v. J.C.P.C.*, we explicitly distinguished SIJ status cases from termination proceedings, noting that "[h]ere, the concept of abandonment is being considered not to deprive a parent of custody or to terminate parental rights." 176 A.3d 136, 141 (D.C. 2018).[3] Nor do we simply consider the "abstract question [of] whether the minor has been neglected or abandoned by the father." *Id.* at 140. Rather, our focus is "whether reunification with the father in El Salvador is 'viable' due to 'abandonment,'"

---

[3] *See USCIS Policy Manual*, Vol. 6, Part J, Ch. 2. § D2 (current as of May 23, 2018), https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter2.html ("[A]ctual termination of parental rights is not required").

calling for "a realistic look at the facts on the ground in the country of origin and a consideration of the entire history of the relationship between the minor and the parent in the foreign country." *Id.*; *see also E.P.L. v. J.L.-A.*, No. 16-FM-991, 2018 WL 3764144, at *4 (D.C. Aug. 9, 2018).

Within this framework, like in *J.U.*, we conclude that "the trial court applied too demanding a standard of . . . abandonment." *Id.* at 142 (internal quotation marks omitted). In denying the petition for SIJ status, the trial court found, as a matter of law, that knowledge of parentage is a prerequisite to abandonment. However, we have never endorsed the view that an abandonment finding in the neglect context can be impeded simply because paternity is not yet established, and we decline to impose such a requirement in the SIJ status context where abandonment is to be interpreted broadly. *See In re Je.A.*, 793 A.2d 447, 449 (D.C. 2002) (noting that in our neglect cases "the test of abandonment . . . is an objective one, asking whether the parent has made . . . reasonable effort[s] to maintain a parental relationship," emphasizing that it is not "necessary to prove that the parent . . . intended to abandon the child") (quoting D.C. Code §§ 16-2316 (d)(1)(C), (d)(2) (2012 Repl.)) (internal quotation marks omitted); *see also J.U.*, 176 A.3d at 140 (interpreting abandonment broadly). We thus cannot agree with the trial court's conclusion that the mother was required to name J.V.B.'s father before she

could prove abandonment and satisfy the requirements of the SIJ status statute.

### III. "Viable Reunification" and "Abandonment"

As for reunification, the trial court determined that it was not viable, but that the lack of viability was not due to John Doe's abandonment of J.VB. The record reveals, however, that John Doe has made no effort to assume any parental responsibility for J.V.B., never "participate[ed], directly or indirectly, in [her] care and upbringing," and has never made himself known. *In re Je.A.*, 793 A.2d at 448-49. Moreover, "what is at issue here is not 'reunification' with the father but rather initial 'unification' itself." *J.U.*, 176 A.3d at 143. All things considered, reunification of J.V.B. with her father — who has never been involved in her life — is not viable, i.e., "practicable; workable" due to abandonment.[4] *Id.*

In reaching this conclusion, we acknowledge the difficult position in which

---

[4] While we apply our state law, we note that this conclusion is consistent with rulings in other jurisdictions. *See, e.g.*, *Guardianship of Penate*, 76 N.E.3d 960, 968 (Mass. 2017) ("[W]e note the judge's acknowledgment that [the child] has never known her father and that, in fact, he is 'unknown.' In these circumstances, a finding that reunification with the father is not viable due to neglect or abandonment is difficult to avoid."); *In re Erick M.*, 820 N.W.2d 639, 647 (Neb. 2012) ("[A] petitioner can show an absent parent's abandonment by proof that the juvenile has never known that parent").

the trial court is placed in SIJ cases when attempting to "develop[ ] a proper evidentiary record," while also ensuring that "[t]he possibility of collusion is not [ ] discounted." *Id.* at 141 n.9. But it is not the trial court's duty, nor this court's duty, to determine whether a petition for SIJ status is "bona fide." *Id.*; *see also Simbaina v. Bunay*, 109 A.3d 191, 202 (Md. Ct. Spec. App. 2015) ("The state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent") (citation and internal quotation marks omitted); *accord In re Danely C.*, No. 16-CV-1115, 2017 WL 5901022, at *7-8 (Tenn. Ct. App. Nov. 29, 2017). That responsibility lies squarely with the United States Custom and Immigration Services ("USCIS"). We therefore caution the trial court against imposing such insuperable evidentiary burdens on SIJ status applicants. *In re Dany G.*, 117 A.3d 650, 655 (Md. Ct. Spec. App. 2015) ("Congress established the requirements for SIJ status knowing that those seeking the status would have limited abilities to corroborate testimony with additional evidence.").

## IV. Conclusion

For the foregoing reasons, we vacate the April 26, 2016, and May 26, 2016,

orders appealed and remand this case to the trial court to enter an amended order consistent with this opinion that includes the requisite SIJ status finding that J.V.B.'s reunification with her father is not viable due to abandonment under District of Columbia law.

*So ordered.*