136 Nev., Advance Opinion 57

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

IN THE MATTER OF THE
GUARDIANSHIP OF B.A.A.R., A
PROTECTED MINOR.

LUCIA A.A.,
Appellant,
vs.
MARIA M.R.; AND JESUS V.A.,
Respondents.

No. 78626-COA

FILED

SEP 03 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a post-judgment district court order in a guardianship matter. Eighth Judicial District Court, Family Court Division, Clark County; William S. Potter, Judge.

*Reversed and remanded.*

Law Offices of Martin Hart, LLC, and Alissa A. Cooley, Las Vegas, for Appellant.

Jesus V.A.,
in Pro Se.

Maria M.R.,
in Pro Se.

BEFORE GIBBONS, C.J., TAO and BULLA, JJ.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

20-32489

## OPINION

PER CURIAM:

NRS 3.2203 provides that Nevada district courts may, in certain types of proceedings, make the predicate factual findings necessary for an individual to apply for Special Immigrant Juvenile (SIJ) status with the United States Citizenship and Immigration Services of the Department of Homeland Security (USCIS). In her petition for guardianship of her nephew, B.A.A.R., appellant Lucia A.A. requested that the district court make such findings, including a finding that reunifying B.A.A.R. with his mother in his country of origin was not viable due to abuse or neglect. In denying Lucia's request, the district court applied the heightened standard of proof applicable in proceedings for the termination of parental rights under NRS Chapter 128. As an issue of first impression, we hold that a party requesting predicate factual findings under NRS 3.2203 need only show that such findings are warranted by a preponderance of the evidence, which is the minimum civil standard of proof, rather than the heightened standard applicable in termination proceedings. Thus, because the district court evaluated Lucia's request for predicate findings under the incorrect standard, we reverse the denial of the request and remand for further proceedings consistent with this opinion.

Additionally, because the district court appears to have misconstrued both the statutory definition of "abuse or neglect" under NRS 3.2203 and Lucia's arguments concerning it, we take the opportunity to briefly discuss that term. In so doing—and in line with recent precedent—we emphasize that district courts should consider the entire history of the relationship between a parent and child when evaluating the practical workability of reunification in light of past abuse or neglect.

 

## BACKGROUND

B.A.A.R. was born in El Salvador in 2001 to respondents Maria M.R. and Jesus V.A. He lived there with Maria and other family members until he fled to the United States as a teenager in 2018. Ultimately, B.A.A.R.'s aunt, Lucia, took him into her care in Las Vegas, and she petitioned the district court for guardianship. Despite being served with the petition, neither Maria nor Jesus opposed it or otherwise appeared in the proceedings below.[1] The district court granted the unopposed petition and appointed Lucia as B.A.A.R.'s guardian, and B.A.A.R. consented to the continued existence of the guardianship until he reaches the age of 21.

In her petition for guardianship, Lucia had also requested that the district court make predicate factual findings under NRS 3.2203 that would allow B.A.A.R. to apply for SIJ status with USCIS. Lucia later submitted a more detailed motion, along with supporting declarations from both herself and B.A.A.R., alleging that reunifying B.A.A.R. with Maria in El Salvador was not viable because of abuse or neglect. Lucia further asserted that returning to El Salvador would not be in B.A.A.R.'s best interest. Lucia argued primarily that Maria had allowed B.A.A.R. to be exposed to domestic violence occurring between Maria and her live-in boyfriend, Jose, and that she had failed to intervene when Jose physically abused B.A.A.R.'s sister in the family home and when Jose threatened to kill B.A.A.R. if he continued to intervene in those altercations. According to Lucia, and as set forth in B.A.A.R.'s declaration, these events caused B.A.A.R. to fear Jose and suffer emotional distress. Lucia asserted that this amounted to abuse or neglect as defined under NRS 3.2203, as did Maria's

---

[1]Likewise, neither Maria nor Jesus filed an answering brief in this appeal.

poverty and lack of employment, because she was unable to properly provide for B.A.A.R.

After the district court entered its order appointing Lucia as B.A.A.R's guardian, it issued a separate order denying Lucia's request for findings under NRS 3.2203. In denying the request, the court determined that the allegations in the motion and accompanying declarations did not provide sufficient factual support for a finding that reunification was not viable, especially in light of the fact that Maria and Jose had separated months before B.A.A.R. fled to the United States. The district court further stated that it would require Lucia to present a far more detailed history of neglect if the sole basis for such a finding was Maria's poverty, reasoning that a lack of financial resources alone is never a sufficient basis to terminate a parent's relationship with her child. Lucia now appeals from the district court's order.

*ANALYSIS*

Lucia contends that the district court erroneously applied the heightened standard of proof applicable in proceedings for the termination of parental rights to her request for predicate findings under NRS 3.2203. She further contends that the district court misconstrued the statutory definition of "abuse or neglect" and thereby ignored her primary argument as to why reunifying B.A.A.R. with his mother is not viable—that Maria abused or neglected B.A.A.R. by allowing him to be exposed to Jose's harmful behavior. We address each of these arguments below, in turn.

*Standard of review*

We review a district court's factual determinations for an abuse of discretion. *In re Guardianship of N.M.*, 131 Nev. 751, 754, 358 P.3d 216, 218 (2015). But the district court must apply the correct legal standard in reaching its decision, and we owe no deference to legal error. *See Davis v.*

*Ewalefo*, 131 Nev. 445, 450, 352 P.3d 1139, 1142 (2015); *Williams v. Waldman*, 108 Nev. 466, 471, 836 P.2d 614, 617-18 (1992). Moreover, this court reviews the district court's interpretation of statutes de novo. *Amaya v. Guerrero Rivera*, 135 Nev. 208, 210, 444 P.3d 450, 452 (2019) (interpreting NRS 3.2203).

*Predicate factual findings for Special Immigrant Juvenile status*

Obtaining SIJ status—which allows undocumented juveniles[2] to acquire lawful permanent residency in the United States—is a two-step process involving both state and federal law. *Id.* at 209, 444 P.3d at 451. First, an aspiring applicant must obtain an order from a state juvenile court[3] issuing certain predicate findings, and only once such an order is issued may the applicant petition USCIS for SIJ status. *Id.* at 209, 444 P.3d at 451-52. While the function of state courts in this process is limited, they nonetheless play a key role in facilitating an applicant's efforts to obtain SIJ status. *See Leslie H. v. Superior Court*, 168 Cal. Rptr. 3d 729, 735 (Ct. App. 2014) (noting that, although the federal government has exclusive jurisdiction to grant SIJ status, "state juvenile courts play an important and indispensable role in the SIJ application process" (internal quotation marks omitted)). As our supreme court recognized in *Amaya*, "[t]he state trial

---

[2]Although B.A.A.R. is now over 18 years of age, he remains a juvenile/child for purposes of this process, which is defined in relevant part as an unmarried individual under the age of 21. 8 C.F.R. § 204.11(c) (2019); NRS 3.2203(8)(c); *see* NRS 159.343(1) (allowing the district court, with the consent of a protected person who is seeking SIJ status, to extend the appointment of the guardian until the protected person reaches age 21).

[3]"Juvenile court" is defined as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a).

court does not determine whether a petitioner qualifies for SIJ status, but rather provides an evidentiary record for USCIS to review in considering an applicant's petition." 135 Nev. at 209-10, 444 P.3d at 452 (citing *Benitez v. Doe*, 193 A.3d 134, 138-39 (D.C. 2018)); *see Romero v. Perez*, 205 A.3d 903, 915 (Md. 2019) ("[T]rial judges are *not* gatekeepers tasked with determining the legitimacy of SIJ petitions; that is exclusively the job of USCIS.").

NRS 3.2203 sets forth the mechanism by which an aspiring applicant may obtain SIJ predicate findings, which "may be made by the district court at any time during a proceeding held pursuant to [various chapters of the Nevada Revised Statutes]." NRS 3.2203(2). Pursuant to NRS 3.2203(3), a person may include in a petition or motion made in various types of proceedings, including guardianship proceedings under NRS Chapters 159 and 159A,[4] a request that the district court make the following predicate findings to allow the subject juvenile to apply for SIJ status:

> (1) the juvenile is dependent on a juvenile court, the juvenile has been placed under the custody of a state agency or department, or the juvenile has been placed under the custody of an individual appointed by the court (dependency or custody prong); (2) due to abandonment, abuse, neglect, or some comparable basis under state law, the juvenile's reunification with one or both parents is not viable (reunification prong); and (3) it is not in

---

[4]In addition to guardianship proceedings, NRS 3.2203 applies in proceedings under NRS Chapters 62B (general administration of juvenile justice), 125 (dissolution of marriage), and 432B (protection of children from abuse and neglect). NRS 3.2203(2)-(3). Further, the Supreme Court of Nevada has recognized that the statute also applies in child custody proceedings under NRS Chapter 125C. *See Amaya*, 135 Nev. at 210 n.4, 444 P.3d at 452 n.4.

the juvenile's best interest to be returned to the country of the juvenile's origin (best interest prong).

*Amaya*, 135 Nev. at 210, 444 P.3d at 452 (citing 8 U.S.C. § 1101(a)(27)(J) and NRS 3.2203(3)). If the district court determines that there is evidence to support all of the findings—including, but not limited to, a declaration from the subject juvenile—it "shall issue an order setting forth such findings." NRS 3.2203(4). And the use of the word "shall" in the statute indicates that issuing such an order is mandatory if there is sufficient evidence to support the findings. *See Pasillas v. HSBC Bank USA*, 127 Nev. 462, 467, 255 P.3d 1281, 1285 (2011) ("[T]his court has stated that 'shall' is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature." (internal quotation marks omitted)).

*The preponderance-of-the-evidence standard applies when a district court determines whether to make SIJ predicate findings under NRS 3.2203*

Lucia contends that the district court erroneously applied the heightened standard of proof applicable in proceedings for the termination of parental rights to her request for predicate findings under NRS 3.2203. Specifically, she points to a portion of the district court's order where it stated that it "would require [a] very specific and detailed history of neglect if the sole basis for such neglect is a parent's poverty" and that, "[w]hile lack of financial resources may be sufficient to temporarily remove a child from a parent[,] it is never a sufficient basis to terminate the relationship; or in other words, to find that reunification is not viable." Because we agree with Lucia that this language indicates that the district court applied the incorrect standard of proof, we reverse.[5]

---

[5]Although we reverse and remand for application of the appropriate standard of proof, we nevertheless agree with the district court insofar as it

NRS 3.2203 is silent as to what standard of proof applies to a request for SIJ predicate findings, and our courts have not previously addressed this issue. But the Supreme Court of Nevada has recognized that the preponderance-of-the-evidence standard, which is the minimum civil standard of proof, is the standard generally applicable in civil cases. *Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev. 245, 251, 327 P.3d 487, 491 (2014). Accordingly, the standard applies in all civil proceedings "absent a clear legislative intent to the contrary." *Mack v. Ashlock*, 112 Nev. 1062, 1066, 921 P.2d 1258, 1261 (1996). One such legislative exception is found in NRS Chapter 128, which governs proceedings for the termination of parental rights and requires that petitioners establish the facts in support of termination by clear and convincing evidence. *See id.*; *see also* NRS 128.090(2); *Santosky v. Kramer*, 455 U.S. 745, 753, 769 (1982) (requiring a standard of at least "clear and convincing evidence" to afford due process in state court proceedings for the termination of parental rights); *In re Parental Rights as to Q.L.R.*, 118 Nev. 602, 605, 54 P.3d 56, 58 (2002) (citing *Santosky*, 455 U.S. at 753).

In its order, the district court equated a predicate finding that reunification is not viable under NRS 3.2203 with the termination of parental rights. But the proceedings below, which were not even proceedings to determine whether B.A.A.R. actually qualifies for SIJ status, *see Amaya*, 135 Nev. at 209-10, 444 P.3d at 451-52, were not termination proceedings under NRS Chapter 128. *See Lopez v. Serbellon Portillo*, 136 Nev., Adv. Op. 54, ___ P.3d ___, ___ (Aug. 6, 2020) (noting that "SIJ findings do not result in the termination of parental rights"); *see also Kitoko v.*

---

determined that Maria's poverty alone does not amount to "abuse or neglect" under the relevant statutes, as discussed *infra* note 6.

*Salomao*, 215 A.3d 698, 708-09 (Vt. 2019) (clarifying in a similar case involving SIJ predicate findings that, "[t]o the extent that the trial court perceived that a finding that reunification with father is not viable would be tantamount to terminating father's parental rights," such a "finding would not amount to a termination . . . and would not preclude future contact between children and father should father reestablish contact").

Moreover, because NRS 3.2203 does not set forth an applicable standard of proof, there is no clear legislative intent for district courts to apply anything other than the preponderance-of-the-evidence standard when determining whether SIJ predicate findings are warranted. *See Mack*, 112 Nev. at 1066, 921 P.2d at 1261. Indeed, other appellate courts that have addressed this standard-of-proof question have likewise concluded that the preponderance-of-the-evidence standard applies when a state juvenile court determines whether to make SIJ predicate findings. *See B.R.L.F. v. Sarceno Zuniga*, 200 A.3d 770, 776 (D.C. 2019) (holding that the preponderance-of-the-evidence standard applies when a court is determining whether to make the SIJ predicate finding that reunification with a parent is not viable); *Romero*, 205 A.3d at 912-13 (concluding that, "because [SIJ] proceedings do *not* involve any termination of parental rights," the preponderance-of-the-evidence standard applies).

Based on the foregoing analysis, we—like the other courts to have addressed this issue—hold that an individual requesting predicate factual findings under NRS 3.2203 need only demonstrate that such findings are warranted by a preponderance of the evidence. *See B.R.L.F.*, 200 A.3d at 776; *Romero*, 205 A.3d at 912-13; *see also Lopez*, 136 Nev., Adv. Op. 54, ___ P.3d at ___; *cf. In re Temp. Custody of Five Minor Children*, 105 Nev. 441, 445, 777 P.2d 901, 903 (1989) (noting that, "[b]ecause an order for

temporary custody [under NRS Chapter 432B] differs significantly from an order terminating parental rights, . . . the lesser [preponderance-of-the-evidence] standard is appropriate" when determining whether to enter such an order). And this standard of proof controls as to the SIJ predicate findings regardless of the type of proceeding in which the findings are sought.

As noted previously, NRS 3.2203 applies in a variety of different proceedings, *see* NRS 3.2203(2)-(3), and in some of those proceedings standards of proof other than the preponderance of the evidence generally apply. For example, petitioners in guardianship proceedings like those at issue here must demonstrate that the guardianship itself is necessary by clear and convincing evidence. *See* NRS 159.055(1); NRS 159A.055(1). However, nothing in the guardianship statutes, nor in any of the other statutory schemes in which NRS 3.2203 applies, indicates that a heightened standard of proof would ever apply to a request for SIJ predicate findings. And our supreme court has recognized in comparable circumstances that different standards of proof may apply to different parts of a single proceeding. *See In re Parental Rights as to J.D.N.*, 128 Nev. 462, 472, 283 P.3d 842, 848-49 (2012) (holding that a preponderance standard applies when parents seek to rebut statutory presumptions in termination-of-parental-rights proceedings, even though petitioners in such proceedings are required by statute to satisfy a clear-and-convincing-evidence standard with respect to the facts supporting termination, because the relevant statutes are silent as to what standard applies to rebut the presumptions).

Because, as discussed above, an individual requesting predicate factual findings under NRS 3.2203 need only demonstrate that such findings are warranted by a preponderance of the evidence, the district

court erred in applying the heightened standard of proof applicable in termination proceedings to Lucia's underlying request for findings. And because it is not clear that the district court would have reached the same conclusion on the viability of reunification had it applied the correct standard of proof, we must reverse the district court's decision and remand for further proceedings. *See Nassiri*, 130 Nev. at 249, 327 P.3d at 490 (noting that the function of a standard of proof "is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication'" (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)).

On remand, the district court must consider whether Lucia has shown, by a preponderance of the evidence, that reunification of B.A.A.R. with his mother is not viable because of abuse or neglect. If the district court determines that reunification is not viable, it must then consider whether it is in B.A.A.R.'s best interest to return to El Salvador. NRS 3.2203(3)(c). And if the district court finds that returning to El Salvador is not in his best interest, it shall enter an order setting forth findings that would allow B.A.A.R. to petition USCIS for SIJ status. NRS 3.2203(4).

*A district court may find that reunification is not viable due to past abuse or neglect*

Although the district court's application of the incorrect standard of proof by itself warrants reversal, Lucia further argues that the district court misconstrued the meaning of "abuse or neglect"—which is a single term defined under NRS 3.2203(8)(b)—by focusing only on the abuse allegedly inflicted by Jose on the one hand, and the neglect allegedly brought about by Maria's poverty on the other. Specifically, Lucia argues that the district court's identification of Jose as "the sole purveyor of . . . abuse" and Maria's poverty as "the sole basis [proffered by Lucia] for

[a finding of] neglect" shows that the district court fundamentally misunderstood the statutory definition of "abuse or neglect." Lucia further contends that the court's statements in this regard demonstrate that it misunderstood her primary argument with respect to the reunification prong—that Maria was both the abuser and neglecter, as her failure to prevent Jose's conduct amounted to a particular species of abuse or neglect; namely, "negligent treatment or maltreatment" as set forth in NRS 432B.140.

NRS 3.2203(8)(b) defines "[a]buse or neglect" for purposes of SIJ predicate findings as having "the meaning ascribed to 'abuse or neglect of a child' in NRS 432B.020." And NRS 432B.020 defines that term as "[p]hysical or mental injury of a nonaccidental nature," "[s]exual abuse or sexual exploitation," or, as relevant here, "[n]egligent treatment or maltreatment as set forth in NRS 432B.140," which is "caused *or allowed* by a person responsible for the welfare of the child under circumstances which indicate that the child's health or welfare is harmed or threatened with harm." NRS 432B.020(1) (emphasis added). In turn, NRS 432B.140 provides that

> [n]egligent treatment or maltreatment of a child occurs if a child has been subjected to harmful behavior that is terrorizing, degrading, painful or emotionally traumatic, has been abandoned, is without proper care, control or supervision or lacks the subsistence, education, shelter, medical care or other care necessary for the well-being of the child because of the faults or habits of the person responsible for the welfare of the child or the neglect or refusal of the person to provide them when able to do so.

Accordingly, as relevant to the circumstances at issue here, a parent's allowing his or her child to be subjected to conduct (e.g., by failing to intervene) that is terrorizing or emotionally traumatic and threatens the health or welfare of the child may amount to abuse or neglect as defined under NRS 3.2203(8)(b).[6] *See* NRS 432B.020(1)(c); NRS 432B.140; *cf. In re Five Minors*, 105 Nev. at 445-46, 777 P.2d at 903-04 (concluding in the context of a protective-custody proceeding that, among other things, the parents' failure "to protect the[ir] children from each other" was sufficient to demonstrate negligent treatment or maltreatment under a previous, less-expansive version of NRS 432B.140).

In light of the applicable statutes, we agree with Lucia that the abovementioned statements in the district court's order indicate that it may have misconstrued the exact parameters of the relevant statutory definitions and of Lucia's associated arguments, at least to the extent that it appeared to not recognize that Maria's inaction with respect to Jose might have amounted to abuse or neglect. However, the district court did briefly acknowledge Lucia's argument regarding Maria's inaction in its order. But in so doing, the court noted that Maria and Jose had ended their relationship and that Jose had left the family's home months before B.A.A.R. fled to the United States, and it appeared to disregard Lucia's argument regarding Maria's past inaction on those grounds.

---

[6]We note that the district court was correct in essentially determining that, on the evidentiary record presented below, Maria's poverty alone would not amount to abuse or neglect under NRS 3.2203. The declarations Lucia submitted to the district court do not demonstrate that Maria's failure to financially provide for B.A.A.R. was attributable to her "faults or habits" or that she was able to provide for him and "neglect[ed] or refus[ed]" to do so. *See* NRS 432B.140.

As our supreme court recently recognized, however, when determining whether reunification with a parent is viable, a district court should consider "the entire history of the relationship between the minor and the parent in the foreign country." *Lopez*, 136 Nev., Adv. Op. 54, ___ P.3d at ___ (quoting *J.U. v. J.C.P.C.*, 176 A.3d 136, 140 (D.C. 2018)). This entails "assess[ing] the impact of the history of the parent's past conduct on the viability, *i.e.*, the workability or practicability of a forced reunification of parent with minor, if the minor were to be returned to the home country." *Id.* (quoting *J.U.*, 176 A.3d at 141). District courts should therefore consider the following nonexhaustive list of factors when making such a determination:

> (1) the lifelong history of the child's relationship with the parent (i.e., is there credible evidence of past mistreatment); (2) the effects that forced reunification might have on the child (i.e., would it impact the child's health, education, or welfare); and (3) the realistic facts on the ground in the child's home country (i.e., would the child be exposed to danger or harm).

*Id.* (quoting *Romero*, 205 A.3d at 915). Accordingly, as relevant here, the district court should consider Maria's past conduct when evaluating the reunification prong, regardless of Jose's exit from the family home.

Thus, on remand, in addition to applying the appropriate standard of proof as set forth above, the district court must follow the approach set forth by the supreme court in *Lopez* for evaluating the viability of reunification. *Id.* In so doing, it should evaluate whether Maria's past conduct constituted abuse or neglect such that reunifying B.A.A.R. with her would not be viable. And should it decide that reunification is not viable,

the district court must proceed to evaluate whether returning to El Salvador would be in B.A.A.R.'s best interest. NRS 3.2203(3)(c).

## *CONCLUSION*

A party requesting predicate factual findings under NRS 3.2203 must demonstrate that such findings are warranted by a preponderance of the evidence. Because the district court applied the incorrect standard of proof to Lucia's request for predicate factual findings, we reverse its order denying the request and remand this matter for further proceedings. On remand, we instruct the district court to reevaluate Lucia's evidence and arguments with respect to the reunification prong consistent with this opinion and the supreme court's recent opinion in *Lopez v. Serbellon Portillo*, 136 Nev., Adv. Op. 54, ___ P.3d ___ (Aug. 6, 2020). Should it determine that Lucia has shown, by a preponderance of the evidence, that reunification of B.A.A.R. with Maria is not viable because of abuse or neglect, the district court must then consider whether it is in B.A.A.R.'s best interest to return to El Salvador. And if it is not, the district court shall enter an order setting forth predicate findings that would allow B.A.A.R. to petition USCIS for SIJ status.[7]

_____, C.J.
Gibbons

_____, J.          _____, J.
Tao                                                          Bulla

---

[7]In light of our disposition, we need not address any of the other arguments Lucia presents on appeal.

COURT OF APPEALS
OF
NEVADA

(O) 1947B