590 A.2d 165

**In re ADOPTION/GUARDIANSHIP NO. 87A262 in the Circuit Court for Baltimore County.**

**No. 35, Sept. Term, 1990.**

Court of Appeals of Maryland.

May 29, 1991.

**14**

Donna R. Heller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, Patricia Cox Waldman (Legal Aid Bureau, Inc., both on brief), Towson, for appellant.

Judith Hooper Shub, Baltimore (Gerald D. Glass, Towson), both on brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

CHASANOW, Judge.

Following an investigation of a report of child sexual abuse, three-year-old Tiffany H. was adjudicated a child in need of assistance (CINA) on March 24, 1986, and committed to the Baltimore County Department of Social Services (DSS) for placement with a foster care family. The DSS's original plan for Tiffany was reunification with her parents provided several conditions were met. The conditions included psychiatric evaluation of the parents, attendance by

the mother at a DSS mothers' support group, and supervised visits with Tiffany at the agency.

The parents failed to keep an appointment for psychiatric evaluation, and a review hearing ensued. The juvenile court again ordered a psychiatric evaluation and further ordered that the parents enter treatment and that supervised visitation take place bi-weekly. The parents entered the DSS-prescribed therapy but, for reasons which are in dispute, did not complete the treatment program. The bi-weekly visitations continued until April 27, 1987, when they were terminated at the request of the DSS because of new allegations of prior sexual abuse of Tiffany by her mother and because of "inappropriate" remarks made by the parents during visitation. The "new" allegations of prior sexual abuse related to incidents which had occurred prior to Tiffany's initial placement in foster care. The record does not reveal any incidents of abuse since Tiffany was removed from the home in 1986.

 Ultimately, both parents were criminally charged with child sexual abuse. Although they did not deny that Tiffany had been sexually abused, each parent initially refused to acknowledge any responsibility for the abuse. There was, however, some suggestion that the father may have abused the child while in an alcoholic blackout. Tiffany's mother pleaded guilty to the criminal charges under an *Alford* plea,[1] ostensibly to avoid the risk of a jail sentence because she was attending a new high-risk baby at home. The father pleaded guilty and was placed on probation.

 In July 1987, the DSS changed Tiffany's permanent plan from reunification to adoption because her placement

---

**1.** "An *'Alford'* plea is a guilty plea without an admission of guilt. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A court may accept such a plea only after determining (1) that the plea is voluntary; and (2) that there is factual basis for the plea. Md.Rule 4–242(c)." *Pennington v. State,* 66 Md.App. 710, 711 n. 1, 505 A.2d 895, 896 n. 1 (1986), *aff'd,* 308 Md. 727, 521 A.2d 1216 (1987).

in foster care had continued for more than 18 months [2] and the DSS believed that the parents had made only minimal efforts to engage in court-ordered treatment. A particular point of contention between the DSS and the parents appears to be the admission of responsibility for the abuse. The DSS contends that such admission is necessary to therapeutically resolve the abuse and ensure Tiffany's future protection. The parents contend that the DSS refused to entertain a plan for reunification unless and until the parents took responsibility for the abuse. There is conflicting expert testimony on this point, but it does appear that the DSS took the position that admission of responsibility was a threshold step toward reunification.

Although full cooperation with the DSS therapy plan seems to have been lacking in this case, it does appear from the record that both parents have made efforts at treatment. The mother has participated in some of the recommended programs, such as attending Survivors of Incest and Alanon meetings, and has undergone private counselling. The father sought treatment for his alcohol and drug problem and apparently continues to participate in Alcoholics Anonymous. There was uncontroverted testimony that he has been drug-free and alcohol-free since 1986, except for a one-night relapse in January 1989 when he got drunk after his father's funeral.

On November 10, 1987, the DSS petitioned the Circuit Court for Baltimore County for guardianship with the right to consent to either adoption of Tiffany or to long-term care short of adoption. When the matter came on for trial in August of 1989, Tiffany had had virtually no contact with her parents for more than two years. At the conclusion of the trial, the trial judge (Fader, J.) stated, "I cannot get out of my mind and heart the fact that visits towards reunifica-

---

2. It may not be presumed that Tiffany's best interest lies in the termination of parental rights merely because she has been in foster care for more than eighteen months. *See Wash. Co. Dep't Soc. Serv. v. Clark,* 296 Md. 190, 197, 461 A.2d 1077, 1081 (1983); *see also Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

tion were going on very nicely, ... and all of the sudden, with the court order, [they] were suspended." The court held it could not find by clear and convincing evidence that it was in Tiffany's best interest to terminate the parental rights of her parents. The petition was denied. The DSS and counsel for Tiffany H. noted appeals to the Court of Special Appeals. We granted certiorari while the case was pending in that court.

Maryland Code (1984, 1990 Cum.Supp.), Family Law Article, § 5–313 provides, in pertinent part,

"(a) *In general.*—A court may grant a decree of adoption or a decree of guardianship, without the consent of a natural parent otherwise required ... if the court finds by clear and convincing evidence that it is in the best interest of the child to terminate the natural parent's rights as to the child and that: ...

(2) in a prior juvenile proceeding, the child has been adjudicated to be a child in need of assistance....

(c) *Required considerations.*—In determining whether it is in the best interest of the child to terminate a natural parent's rights as to the child in any case, ... the court shall consider:

(1) the timeliness, nature, and extent of the services offered by the child placement agency to facilitate reunion of the child with the natural parent;

(2) any social service agreement between the natural parent and the child placement agency, and the extent to which all parties have fulfilled their obligations under the agreement;

(3) the child's feelings toward and emotional ties with the child's natural parents, the child's siblings, and any other individuals who may significantly affect the child's best interest;

(4) the child's adjustment to home, school, and community;

(5) the effort the natural parent has made to adjust the natural parent's circumstances, conduct, or conditions to

make it in the best interest of the child to be returned to the natural parent's home, including:

(i) the extent to which the natural parent has maintained regular contact with the child under a plan to reunite the child with the natural parent, but the court may not give significant weight to any incidental visit, communication, or contribution;

(ii) if the natural parent is financially able, the payment of a reasonable part of the child's substitute physical care and maintenance;

(iii) the maintenance of regular communication by the natural parent with the custodian of the child; and

(iv) whether additional services would be likely to bring about a lasting parental adjustment so that the child could be returned to the natural parent within an ascertainable time, not exceeding 18 months from the time of placement, but the court may not consider whether the maintenance of the parent-child relationship may serve as an inducement for the natural parent's rehabilitation; and

(6) all services offered to the natural parent before the placement of the child, whether offered by the agency to which the child is committed or by other agencies or professionals.

(d) *Considerations following juvenile adjudication.*— (1) In determining whether it is in the best interest of the child to terminate a natural parent's rights as to the child in a case involving a child who has been adjudicated to be a child in need of assistance, ... the court shall consider the factors in subsection (c) of this section and whether any of the following continuing or serious conditions or acts exist:

(i) the natural parent has a disability that renders the natural parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for long periods of time;

(ii) the natural parent has committed acts of abuse or neglect toward any child in the family...."

It is undisputed that Tiffany was adjudicated a CINA. Therefore, parental rights may be terminated under the statute if the court finds by clear and convincing evidence that such termination is in the best interest of the child. In making that determination, section 5–313 requires that the court consider the factors outlined in subsections (c) and (d).

The DSS contends, and Tiffany intimates, that the trial court erred in failing to make specific findings of fact as to each factor listed in section 5–313(c) and (d). They cite *Wash. Co. Dep't Soc. Serv. v. Clark*, 296 Md. 190, 461 A.2d 1077 (1983), which states,

> "Although ... the chancellor gave an in-depth analysis of the facts as related to the provisions of the statute, we observe that no mention was made of sub-sections ([c]) (3) or ([c]) (4). We believe that, upon remand, the chancellor *should* make findings of fact as to each item listed in ([c]) so that a reviewing court will be able to properly perform its function." [3] (Emphasis added.)

*Id.* at 199, 461 A.2d at 1081–82. The remand in *Clark*, however, was not based on the court's failure to make findings of fact; it was based on the court's failure to appoint counsel to represent the children. *Id.* at 199, 461 A.2d at 1082.

We repeat that, as a general rule, the court should make findings of fact as to each item listed in section 5–313(c) in a proceeding to terminate parental rights. *Id.*, 461 A.2d at 1081–82. In the instant case, however, we do not find the court's failure to make more specific, item-by-item findings reversible error. We believe that the legislative requirement of consideration of the factors itemized in section 5–313(c) and (d) demonstrates the intent that the utmost caution should be exercised in any decision to terminate parental rights. In cases where parental rights are terminated, it is important that each factor be addressed

---

**3.** The statutory references in *Clark* cite to Maryland Code (1957, 1981 Repl.Vol., 1982 Cum.Supp.), Article 16, § 76(b), which is now codified at Md.Code (1984, 1990 Cum.Supp.), Family Law Art., § 5–313(c).

specifically not only to demonstrate that all factors were considered but also to provide a record for review of this drastic measure. To reverse a denial of termination of parental rights because the trial judge failed to itemize his factual findings, however, is to allow the statute to be used as a sword by the DSS to sever the family ties it was designed to shield. We decline to assign such an intent to the Legislature. It is clear to us that, in this case, the trial judge conscientiously applied section 5–313. In his own words, "I'm very sorry that there is not a better solution for Tiffany, but at this time I don't see that I'm able in good conscience to say that the requisites of the statute have been fulfilled." Since the judge's decision to deny termination was clearly based on consideration of the factors set forth in section 5–313, his failure to make specific findings of fact as to each item of the statute in this case is not reversible error.

██ It is argued that the trial judge improperly based his decision not to terminate parental rights in this case upon his disagreement with the suspension of visitation in 1987 by the juvenile court. The DSS maintains that the doctrine of collateral estoppel precludes the trial judge's "relitigation" of this issue. We reject this argument for two reasons. First, our reading of the record in this case does not disclose any "relitigation" of the visitation question. Rather, the judge clearly indicated to the contrary: "I will leave any further initiative through the juvenile court as to whether or not there will be any further attempts at visitation or unification in the future." As to the decision facing the trial judge, the record clearly and repeatedly indicates that the judge was, at all times, cognizant that the controlling issue was the best interest of the child. At one point he identified the conflict and specifically recognized his duty:

> "[T]his puts a quandary and a big burden on a trial judge because *it is the best interests of the child that is of the only importance to the Court at this time* and even if the Department of Social Services has messed the thing

up, ... it still may be the best interests to terminate the parental rights because *it is the best interests of the child that is all important at this time."* (Emphasis added.)

The second reason we reject the argument that the trial judge was precluded from considering the order terminating visitation is that section 5–313(c)(5)(i) required that the judge consider "the extent to which the parent has maintained regular contact with the child." Certainly, the judge was entitled to recognize that the reason the parents had not "maintained regular contact with the child" was because, whether rightly or wrongly, they were precluded from doing so by the juvenile court. As was recognized by Judge Robert H. Mason of the Circuit Court for Prince George's County and quoted in *Scott v. Dep't of Social Services,* 76 Md.App. 357, 369, 545 A.2d 81, 87, *cert. denied,* 314 Md. 193, 550 A.2d 381 (1988), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3226, 106 L.Ed.2d 575 (1989),

" '[T]he special nature and circumstances of [a termination of parental rights case] is of such a high magnitude that the entire case must be heard in order that the context in which these events transpired may be properly presented and addressed. Failure to do so would be misleading to the trier of fact in its determination of what is in the best interests of [the child]. The Court cannot and will not address these issues in a time-encapsulated vacuum.' "

This Court has long recognized that

"[u]nlike awards of custody ... adoption decrees [and decrees terminating parental rights] cut the child off from the natural parent, who is made a legal stranger to his offspring. The consequences of this drastic and permanent severing of the strongest and basic natural ties and relationships has led the Legislature and this Court to make sure, as far as possible that adoption shall not be granted over parental objection unless that course clearly is justified. The welfare and best interests of the child

must be weighed with great care against every just claim of an objecting parent."

*Walker v. Gardner*, 221 Md. 280, 284, 157 A.2d 273, 275–76 (1960), *quoted in Beltran v. Heim*, 248 Md. 397, 401, 236 A.2d 723, 725 (1968), and in *Lippy v. Breidenstein*, 249 Md. 415, 420, 240 A.2d 251, 254 (1968). It is these considerations which compel the requirement of clear and convincing evidence before parental rights may be terminated. *See Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Wash. Co. Dep't Soc. Serv. v. Clark*, 296 Md. at 192–97, 461 A.2d at 1078–81. Suspension of visitation in a juvenile case, unlike the proceedings at issue, requires proof by a preponderance of the evidence. Md. Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 3–819(d). In addition, a juvenile court order terminating visitation is subject to modification as circumstances change. We are not convinced that a juvenile court finding by a preponderance of the evidence that visitation should be suspended in 1987 should preclude a circuit court in 1989 from scrutinizing that decision in an irreversible parental rights termination case requiring proof by clear and convincing evidence. *See In re Neil C.*, 308 Md. 591, 521 A.2d 329 (1987) (where father's acquittal in criminal case of child abuse and sex offense charges did not collaterally estop juvenile CINA petition based on same conduct); *cf. Bowling v. State*, 298 Md. 396, 470 A.2d 797 (1984) (State's failure to meet lower standard of proof in CINA case precluded criminal prosecution for child sexual abuse).

Based upon the record before us, we find that the trial judge was not in error. The court psychiatrist testified at trial that the parents hadn't reached the stage in counselling where a final opinion could be rendered as to whether the family could be reunited. There is evidence in the record that, although the parents did not fully cooperate with DSS, they had made efforts at treatment. In addition, since 1986, the father had made great strides in overcoming his drug and alcohol addiction. Furthermore, although the DSS placed blame on the parents for the failure of its

reunification plan, there was evidence that at least some of the circumstances were beyond the parents' control. The mother was unavailable for therapy for extended periods of time due to complications of two pregnancies, as well as the need to care for her high-risk infant. The father had problems in scheduling treatment around his swing-shift work schedule. While the parents could have sought a change in the juvenile court's order suspending visitation, they claim they did not do so on advice of counsel.

As counsel for Tiffany recognizes in its brief, "It is apparent that the trial court found this to be a very close case." The trial judge was in a unique position to evaluate the credibility of the witnesses and speak with the child. He was not convinced by clear and convincing evidence that parental rights should be terminated at this time.

Nevertheless, the trial judge found that it was not in Tiffany's best interest to be removed from the stable environment she has enjoyed since 1987. Indeed, if genuine efforts at reunification continue to be unsuccessful, termination of parental rights at a later date may be appropriate. *Lippy v. Breidenstein*, 249 Md. 415, 240 A.2d 251 (1968), is instructive in this case. In *Lippy*, the adoption of a six-year-old by the foster parents who had raised him since birth was reversed. The Court stated,

> "[T]he record does not support the finding that the consent of the natural father had been improperly withheld. Nor are we convinced ... that the child would make a satisfactory adjustment in the [natural father's] household with brothers and sisters he had not been brought up with. Rather, we think that the concept of adoption in this case was premature and that, instead, the six-year old child should remain in the custody of the foster parents, who have cared for him from birth except for two brief intervals, subject to such change as subsequent circumstances may require."

*Id.* at 420, 240 A.2d at 254. Likewise, it may be said in this case that "the concept of adoption ... was premature."

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-
MORE COUNTY AFFIRMED. COSTS TO BE PAID BY
THE BALTIMORE COUNTY DEPARTMENT OF SOCIAL
SERVICES.