*Celso Monterroso Romero v. Josefa Perez*, No. 27, September Term, 2018

**IMMIGRATION — SPECIAL IMMIGRANT JUVENILE STATUS — BURDEN OF PROOF —** The burden of proof in Special Immigrant Juvenile ("SIJ") status proceedings is the preponderance of the evidence standard, the standard generally applicable in civil cases in Maryland. Accordingly, SIJ petitioners must prove that they satisfy the requisite SIJ status eligibility criteria, enumerated under federal law, by a preponderance of the evidence.

**IMMIGRATION — SPECIAL IMMIGRANT JUVENILE STATUS — LEGAL STANDARD — VIABILITY OF REUNIFICATION — ABUSE, NEGLECT, OR ABANDONMENT —** The circuit court must apply a broad legal standard in SIJ status proceedings to determine if a child immigrant's reunification with a parent is not viable due to abuse, neglect, or abandonment. Specifically, the court must evaluate the totality of the circumstances—which may include the lifelong history of the child with the parent, the effect reunification might have on the child, and the realistic facts on the ground in the child's home country—to decide whether reunification is viable. In doing so, the circuit court should be mindful that it is not a gatekeeper tasked with approving SIJ petitions; it is merely a fact finder. The circuit court is not tasked with engaging in an exacting inquiry regarding whether abuse, neglect, or abandonment occurred in a technical sense; rather, the court must determine whether, broadly speaking, prior parental mistreatment precludes a workable reunification.

IN THE COURT OF APPEALS
OF MARYLAND

No. 27

September Term, 2018

---

CELSO MONTERROSO ROMERO

v.

JOSEFA PEREZ

---

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D.,
   (Senior Judge, Specially Assigned)

JJ.

---

Opinion by Barbera, C.J.

---

Filed: April 1, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Children are a vulnerable cohort, uniquely susceptible to various forms of mistreatment. Their protection is of the utmost importance to all involved in governance and the administration of justice. Consequently, numerous policies at both the federal and state level have been implemented to protect the safety and well-being of children in this country.

One such policy, the application of which is at issue here, is an immigration classification titled "Special Immigrant Juvenile ("SIJ") Status," which protects undocumented immigrant children residing in the United States from being reunified with an abusive parent in the child's home country. *See* Immigration and Nationality Act, 8 U.S.C. § 1101(a)(27)(J). This policy allows such children to become lawful permanent residents of the United States if they satisfy certain eligibility criteria. One criterion requires the child to obtain an order from a state juvenile court that includes certain factual findings about the child's circumstances, including, among others, that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, or abandonment" and that "it would not be in the [child's] best interest to be returned to the [child's] or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. § 1101(a)(27)(J)(i)-(ii).

The present case was initiated in the Circuit Court for Baltimore City. In a proceeding before that court, Celso Monterroso Romero, Petitioner, sought sole custody of his then seventeen-year-old son, R.M.P, an undocumented minor and Guatemalan native.[1,2] Petitioner

---

[1] As shall be noted again later in this opinion, in the SIJ status context, Maryland law defines a "child" as "an unmarried individual under the age of 21 years." Md. Code (1984, 2012 Repl. Vol., 2018 Supp.), § 1-201(a) of the Family Law Article.

[2] To protect the child's identity, the child's initials are used throughout this opinion.

further requested that the circuit court issue an order containing factual findings illustrating R.M.P.'s eligibility for SIJ status, namely that reunification with R.M.P.'s mother, Josefa Perez Carreto ("Perez"), was not viable due to neglect and that it was not in R.M.P.'s best interest to return to Guatemala, where Perez resides.[3] The circuit court granted Petitioner custody of R.M.P. but declined to find that reunification with Perez was not viable due to neglect. The circuit court was unclear about which "standard of proof" should apply to establish such a finding—"clear and convincing evidence" or merely "preponderance of the evidence." Nevertheless, the court ultimately determined that, under either standard, the undisputed evidence offered by Petitioner fell short of establishing that reunification with Perez was not viable due to neglect.

Petitioner noted a timely appeal to the Court of Special Appeals. In a reported opinion, the intermediate appellate court determined preliminarily that the proper standard of proof in SIJ cases is not "clear and convincing evidence" but rather the lower "preponderance of the evidence" standard. *Romero v. Perez*, 236 Md. App. 503, 509 (2018). Then, applying that standard to the record before it, the court concluded that, even under the lower standard, Petitioner had not provided sufficient evidence to support a finding of neglect. *Id.* at 510.

Petitioner sought, and we granted, further review in this Court. On December 7, 2018, following oral argument, we issued a *per curiam* order reversing the judgment of the Court of Special Appeals and remanding the case to that court with instructions to vacate the circuit

---

[3] The child's birth certificate and Petitioner's testimony indicate that the mother's full name is "Josefa Perez Carreto"; however, because the Court of Special Appeals referred to the mother as "Josefa Perez" in its opinion, we do the same here for consistency.

2

court's order and remand the case to that court to enter an amended order that includes the requisite SIJ status findings. *Romero v. Perez*, 462 Md. 60, 61 (2018). Both courts have complied with the order, rendering Petitioner's son eligible, as of January 28, 2019, the date of the circuit court's amended order, to apply for SIJ immigration status.[4] We explain here our reasons underlying this Court's December 7, 2018 order.[5]

## I.

## The SIJ Status Process

We begin with an overview of the SIJ status process.[6] Congress created SIJ status to "provide humanitarian protection for abused, neglected, or abandoned child immigrants" who lack immigration status.[7] U.S. Citizenship and Immigration Services ("USCIS"), *Policy*

---

[4] We directed immediate action in the Court of Special Appeals and the Circuit Court for Baltimore City so that R.M.P. could apply for SIJ status before he attains his 21st birthday on May 2, 2019.

[5] As is evident below, the case *sub judice* presents this Court with novel issues relating to the application process for SIJ status. We are fortunate that our colleagues on the Court of Special Appeals have addressed these issues in several well-reasoned opinions, including the court's opinion in the present case. *See Romero v. Perez*, 236 Md. App. 503 (2018); *Simbaina v. Bunay*, 221 Md. App. 440 (2015); *In re Dany G.*, 223 Md. App. 707 (2015). We commend the work done by that court, and we rely heavily on its decisions throughout this opinion.

[6] For a more detailed discussion on this topic, see the U.S. Citizenship and Immigration Services, *Policy Manual*, Vol. 6, Part J, Ch.1-6 (current as of Jan. 23, 2019) (hereinafter, "USCIS Policy Manual"), https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter1.html, or Washington Coll. of Law, Nat'l Immigrant Women's Advocacy Project, *Special Immigrant Juvenile Status Bench Book: A National Guide to Best Practices for Judges and Courts* (Leslye E. Orloff & Rafaela Rodrigues eds., 2018), http://library.niwap.org/wp-content/uploads/SIJS-Bench-book-complete.pdf.

[7] SIJ status was initially intended to protect "child immigrants eligible for long-term foster care." USCIS Policy Manual at Vol. 6, Part J, Ch. 1, § A. In 2008, Congress expanded the program through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub.

*Manual*, Vol. 6, Part J, Ch. 1, § A (current as of Jan. 23, 2019) (hereinafter, "USCIS Policy Manual"), https://perma.cc/2VMS-YTJD. SIJ status "is an immigration classification that may allow for these vulnerable children to immediately apply for lawful permanent resident status." USCIS, *Immigration Relief for Abused Children: Information for Juvenile Court Judges, Child Welfare Workers, and Others Working with Abused Children* (2014) (hereinafter, "USCIS Info for Juvenile Courts"), https://perma.cc/5CXB-85H7.

The application process for SIJ status is set forth in the Federal Immigration and Nationality Act and involves two primary steps. First, the child, or, as here, someone acting on the child's behalf, must obtain a predicate order from a state juvenile court that includes certain factual findings regarding the "child's eligibility for SIJ status." *Id.* Without that order, "a child cannot apply . . . for SIJ classification." *Id.*; *see also* 8 C.F.R. § 204.11(d) & (d)(2) (classifying the juvenile court order as a "document[] which *must* be submitted in support of the petition" for SIJ status) (emphasis added). Second, the child, or "any person acting on the [child's] behalf," 8 C.F.R. § 204.11(b), must submit a petition, along with the predicate order and other supporting documents, to USCIS for review and approval. USCIS Policy Manual, Vol. 6, Part J, Ch. 2, § A. If USCIS approves the petition,[8] the child is then eligible to apply

L. 110-457 at § 235(d), to include "children who cannot reunify with one or both parents because of abuse, neglect, abandonment, or a similar basis under state law." *Id.* Consequently, a child no longer needs to prove eligibility for long-term foster care to obtain SIJ status, but the child, either through a guardian or on his or her own, must show that "reunification with one or both parents is not viable." *Id.*

[8] Federal law requires the Secretary of the Department of Homeland Security ("DHS") to determine that the SIJ status application is "bona fide, which means that the juvenile court order was sought to obtain relief from abuse [and] neglect . . . and not primarily or solely to obtain an immigration benefit." USCIS Policy Manual at Vol. 6, Part J, Ch. 2, § D.5. DHS

for adjustment of status to a lawful permanent resident under 8 U.S.C. § 1255.[9] *See id.* at Vol. 7, Part F, Ch. 7, § A.

Judge Zarnoch, writing for the Court of Special Appeals in *Simbaina v. Bunay*, 221 Md. App. 440 (2015), aptly noted that the process for attaining SIJ status is atypical in that "a State juvenile court is charged with addressing an issue relevant only to federal immigration law."[10] 221 Md. App. at 449 (citation omitted). The State court's role is limited, however, to rendering findings about SIJ status eligibility; the findings do not confer any immigration benefits. *See* USCIS Info for Juvenile Courts. Only USCIS has authority to approve SIJ petitions. *See* USCIS Policy Manual, Vol. 6, Part J, Ch. 4, § A.

Federal regulations define "juvenile courts" as "court[s] . . . having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R.

---

has delegated "this authority to USCIS. Therefore, USCIS approval of the SIJ petition is evidence of DHS consent." *Id.* at Vol. 6, Part J, Ch. 4, § E.1.

[9] The child can submit the SIJ petition (Form I-360) "alone or concurrently with his or her Application to . . . Adjust Status (Form I-485)." USCIS Policy Manual, Vol. 6, Part J, Ch. 3. Once the SIJ petition is approved and the necessary documents for adjusting status are filed, the child is then subject to additional vetting by USCIS. *See id.* at Vol. 7, Part F, Ch. 7, §§ C and E. The child also must wait until an immigrant visa is available before USCIS will adjudicate the adjustment application. *Id.* at Vol. 7, Part F, Ch. 7, n.45.

[10] The Court of Special Appeals in *Simbaina* observed that one possible objection to the SIJ status statute is that it "imposes a nonjudicial duty on a Maryland court in violation of [the] Separation of Powers." *Simbaina v. Bunay*, 221 Md. App. 440, 450 (2015). The court concluded, however, that no such violation exists because Congress has plenary powers over immigration and "[t]herefore[] the federal government can delegate specific powers to the States to make determinations helpful to determining the immigration status of certain individuals." *Id.* at 452. We are satisfied with this analysis.

§ 204.11(a).[11]   Maryland law designates circuit courts as having such jurisdiction and, consequently, authority to preside over SIJ status proceedings.[12]  *See* Md. Code (1984, 2012 Repl. Vol., 2018 Supp.), § 1-201(b)(10) of the Family Law ("FL") Article (stating that "equity courts" have power over "custody or guardianship of an immigrant child pursuant to a motion for Special Immigrant Juvenile factual findings");[13] *see also In re Dany G.*, 223 Md. App. 707, 716 (2015).

The Court of Special Appeals has held, and we agree, that when a party requests SIJ status findings in his or her pleadings, the circuit court *must* undertake the fact-finding process

---

[11]   8 C.F.R. § 204.11 has "not been updated to reflect the 2008 statutory amendments to the SIJ status statute." *J.U. v. J.C.P.C.*, 176 A.3d 136, 138 n.3 (D.C. 2018).  In September 2011, "USCIS proposed new SIJ regulations . . . but [has] not promulgated them." Ruth Ellen Wasem, Cong. Research Serv., R43703, *Special Immigrant Juveniles: In Brief* 3 n.19 (2014) (citing USCIS, *Special Immigrant Juvenile Petitions*, 76, Fed. Reg. 54978-54986 (proposed Sept. 6, 2011)).  To date, USCIS has not finalized the proposed regulations, causing "[c]ertain portions of the [existing] regulations [to be] superseded."  USCIS Policy Manual at Vol. 6, Part J, Ch. 1, n.9.

[12]   Federal law initially required the DHS Secretary to consent to the juvenile court's jurisdiction in SIJ status cases.  *See* 8 U.S.C. § 1101(a)(27)(J)(iii).  The TVPRA, codified at 8 U.S.C. § 1232, amended this requirement.  USCIS Policy Manual, Vol. 6, Part J, Ch. 1, § B. Now, if a minor is "currently in the custody of the U.S. Department of Health and Human Services (HHS) and seeks a juvenile court order that . . . alters his or her custody status . . . HHS must consent to the juvenile court's jurisdiction." *Id.* at Vol. 6, Part J, Ch. 2, § E.  Here, HHS released R.M.P. into Petitioner's custody, so no HHS consent was required.

[13]   In Maryland, circuit courts are law and equity courts.  *See* Md. Code (1973, 2013 Repl. Vol.), § 1-501 of the Courts & Judicial Proceedings ("CJP") Article.  The courts also function as juvenile courts in, among other matters, Delinquency, Child in Need of Assistance, and Children in Need of Supervision cases.  *See* CJP §§ 3-803, 3-8A-03; *see also* Maryland Rule 11-101 *et seq.*  In SIJ status cases, like custody cases, circuit courts exercise their "equity jurisdiction" under CJP § 1-501, *see* FL § 1-201(a)(10) (2018 Supp.), although there may be instances when the courts sit as "equity" and "juvenile" courts concurrently.

6

(hear testimony and receive evidence) and issue "independent factual findings regarding" the minor's eligibility for SIJ status.[14] *Simbaina*, 221 Md. App. at 458-59 ("The Federal Immigration and Nationality Act . . . requires that a State 'juvenile court' make specific factual findings before a minor can petition the United States Citizenship and Immigration Services for SIJ status."); *see also In re Dany G.*, 223 Md. App. at 713-14. No separate motion is required, but a party's filings must put "the court . . . on notice" that such findings have been requested. *Simbaina*, 221 Md. App. at 458.

Under federal law, a minor is eligible for SIJ status "if he or she is present in the United States, unmarried, under the age of 21," and

(i) . . . has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable

---

[14] The Court of Special Appeals in *Simbaina* acknowledged, without further discussion, that there is a split among the states regarding whether juvenile courts are obligated to make SIJ status findings. *See* 221 Md. App. at 454. Some states, such as California, Georgia, Massachusetts, and New Jersey, require their juvenile courts to render SIJ status findings when asked to do so. *See, e.g.*, *H.S.P. v. J.K.*, 121 A.3d 849, 852 (N.J. 2015) ("Family Part courts faced with a request for an SIJ predicate order should make [those] factual findings"); *Guardianship of Penate*, 76 N.E.3d 960, 966 (Mass. 2017) ("[T]he Probate and Family Court judge may not decline to make special findings if requested by an immigrant child"); *In re J.J.X.C.*, 734 S.E.2d 120, 124 (Ga. 2012) (stating that the trial court "had a duty to consider the SIJ factors and make findings"); *In re Y.M.*, 207 Cal. App. 4th 892, 916 (Cal. Ct. App. 2012). Other states, such as Virginia, Nevada, and Missouri, allow juvenile courts to make SIJ status findings "only to the extent [that] they are ancillary to proceedings under state law." *Ramirez v. Menjivar*, No. 74030, slip op. at 6 (Nev. Dec. 27, 2018). Juvenile courts in those states do not have jurisdiction to hear SIJ petitions as an "independent matter." *See Canales v. Torres Orellana*, 800 S.E.2d 208, 217 (Va. Ct. App. 2017); *see also de Rubio v. Rubio Herrera*, 541 S.W.3d 564, 572-73 (Mo. Ct. App. 2017).

due to abuse, neglect, abandonment, or a similar basis found under State law [and]

 (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence.

*Id.* at 450-51 (quoting 8 U.S.C. § 1101(a)(27)(J)). The *In re Dany G.* court extracted the following "plain English" framework from § 1101(a)(27)(J) and the applicable regulations, which circuit courts should follow when assessing the requisite SIJ status factors:

 (1) The minor is presently in the U.S., unmarried, and under the age of 21;[15]

 (2) The minor is dependent on the court or has been placed under the custody of a state agency/department or individual/entity appointed by the court;

 (3) The presiding court has jurisdiction under Maryland law to make determinations about the minor's custody and care;

 (4) Reunification with one or both of the minor's parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law;[16] and

---

[15] Maryland law defines a "child" as "an unmarried individual under the age of 21 years" for purposes of vesting the circuit courts with jurisdiction over SIJ matters. *See* FL§ 1-201(a) *supra*, n.1. However, because a minor cannot apply for SIJ status upon reaching the age of 21 and the consequences of failing to obtain the status can impose severe hardships, we encourage the circuit courts to address requests for SIJ findings as expeditiously as possible.

[16] The minor need only show that reunification with one parent is not viable due to mistreatment; the minor is not required to establish that reunification with both parents is not viable. USCIS Policy Manual, Vol. 6, Part J, Ch. 2, n.9 ("USCIS interprets the TVPRA changes as a clarification that petitioners . . . may be reunified with *one* parent or other family members.") (emphasis added); *see also Eddie E. v. Superior Court*, 234 Cal. App. 4th 319, 331-32 (Cal. Ct. App. 2015); *In re Marcelina M.-G. v. Israel S.*, 973 N.Y.S.2d 714, 722 (N.Y. App. Div. 2013); *J.U.*, 176 A.3d at 138-39. *But see In re Erick M.*, 820 N.W.2d 639, 648 (Neb. 2012) (requiring Nebraska courts to "consider whether reunification with either parent is feasible"). This distinction is relevant when, as here, the minor seeks to remain with one parent in the United States while avoiding reunification with the other.

(5)   It is not in the minor's best interest to return to his or her country of nationality or last habitual residence.

*See* 223 Md. App. at 714-15 (internal citations omitted) (extrapolating these requirements from 8 U.S.C. § 1101(a)(27)(J), *amended by* the Trafficking Victims Protection Reauthorization Act ("TVPRA"), and 8 C.F.R. § 204.11).  When assessing these factors, circuit courts should be mindful that "USCIS relies on the expertise of the juvenile court," USCIS Policy Manual, Vol. 6, Part J, Ch. 2, § D.5, and "does not go behind the juvenile court order to reweigh evidence," *id.* at Vol. 6, Part J, Ch. 2, § A.  Accordingly, "it is imperative that the predicate order be worded very precisely and contain all necessary language."  *In re Dany G.*, 223 Md. App. at 716.  The orders must provide USCIS with a "reasonable factual basis" for confirming "that the juvenile court made an informed decision . . . for all of the required findings."[17]  USCIS Policy Manual, Vol. 6, Part J, Ch. 2, § D.5.

## II.

## The Present Case

*A. Circuit Court Proceedings.*

This case began in September 2015 when Petitioner, a Baltimore City resident, filed a complaint in the Circuit Court for Baltimore City seeking sole legal and physical custody of his son, R.M.P.  Petitioner simultaneously filed a separate motion requesting the court to

---

[17]  Circuit courts should avoid using "[t]emplate orders that simply recite the immigration statute or regulatory language."  USCIS Policy Manual, Vol. 6, Part J, Ch. 3, § A.3.  USCIS views template orders as insufficient for guiding its determinations of whether an SIJ petition is bona fide.  *See* USCIS Info for Juvenile Courts.

render the requisite SIJ status factual findings for R.M.P. Petitioner alleged that it was in R.M.P.'s best interest to remain in Maryland under Petitioner's custody and care, and that reunification with Perez was not viable because she had neglected him. Perez, who currently resides in Guatemala, did not respond to these filings, and the case proceeded to a default hearing.

Petitioner and R.M.P. testified at the October 2016 hearing. Their testimony was uncontroverted. The testimony revealed that R.M.P. was born to Petitioner and Perez in San Juan Ostuncalco, Quetzaltenango, Guatemala, in 1998. The parties separated in 2000, and Petitioner immigrated to the United States around 2004. R.M.P. lived with Perez after Petitioner left Guatemala, but Petitioner remained in weekly contact with R.M.P. and attempted to support him financially, though Perez misappropriated those funds.

In 2008, when R.M.P. was ten years old, Perez began forcing R.M.P. to work in dangerous conditions. In addition to mandating farm labor (planting potatoes and "moving earth"), Perez also required R.M.P. to journey barefoot into the mountains, unsupervised and surrounded by venomous snakes, to gather heavy loads of firewood. Perez would punish R.M.P. if he did not haul enough wood. In 2012, R.M.P. fell and injured his wrist. Perez did not seek medical attention for her son and the injury persisted.

The forced labor occurred daily for seven years and ceased only when R.M.P. fled to the United States in 2015. R.M.P.'s education suffered; he was unable to complete his

10

homework and fell behind grade level in all subjects.[18]  Since arriving in the United States, R.M.P. has lived a stable life with Petitioner.  R.M.P. expects to graduate high school soon and has dreams of pursuing a college degree thereafter.

In response to this testimony, the circuit court found that Petitioner was "fit and proper to have custody of his son and that . . . [it is] in [R.M.P.'s] best interest" to remain with Petitioner.  The court therefore granted Petitioner's request for sole legal and physical custody of R.M.P.

The court next considered Petitioner's motion for the requisite SIJ status findings.  The court easily found that "the child is 18, under 21.  The child's not married [and is] [p]resently living in the United States."  The court also found that "it's not in [the child's] best interest to return to Guatemala."  The court, however, was confused about whether to apply the "preponderance of the evidence" or "clear and convincing" burden of proof to "make a finding against reunification with" Perez.  The court noted that there was no set burden of proof for establishing such a finding and that the court believed the "clear and convincing" standard applied.  The court ultimately determined that, regardless of which burden of proof it applied, the court was "50/50" on the issue of neglect, and "at that level of evidence," the court "can't make a finding" that R.M.P.'s reunification with Perez was not viable due to neglect.  Consequently, the court denied Petitioner's motion for an order that included all requisite SIJ status findings.

---

[18]  At oral argument, counsel for Petitioner informed this Court that R.M.P. is still in high school because he could not adequately progress with his studies while in Guatemala under Perez's custody.

Petitioner filed a motion to alter or amend that judgment, which the circuit court denied. Petitioner then appealed to the Court of Special Appeals, arguing that the circuit court erred in applying the elevated clear and convincing evidence standard to Petitioner's SIJ status motion. *Romero*, 236 Md. App. at 506-07.

B. *The Appeal.*

The Court of Special Appeals affirmed the circuit court's decision. *Romero*, 236 Md. App. at 505. The court held that the proper burden of proof for SIJ status cases is the preponderance of the evidence standard because that standard is "generally applicable in civil and administrative proceedings" in Maryland. *Id.* at 507 (citation omitted). The Court of Special Appeals then held that, although the circuit court "expressed confusion about the applicable standard," *id.* at 509, that court correctly applied the preponderance of the evidence standard, *id.* at 510. The intermediate appellate court concluded, in the end, that, based on the evidence presented, the circuit court's finding that Petitioner "had not adduced credible evidence sufficient for the court to make a finding of neglect" was not clearly erroneous. *Id.*

Petitioner subsequently filed a petition for writ of certiorari, which we granted on July 12, 2018, *Romero v. Perez*, 460 Md. 2 (2018), to resolve two issues: (1) whether the burden of proof in SIJ status proceedings should be the preponderance of the evidence standard or the clear and convincing standard; and (2) whether the legal framework for evaluating mistreatment in SIJ status cases should be broad, looking at the totality of the circumstances, or narrow, involving an exacting inquiry of the evidence presented.[19]

---

[19] Petitioner framed the questions presented as follows:

## III.

## Standard of Review

Maryland Rule 8-131(c) provides that "[w]hen an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." It is well-established that we review the trial court's factual findings for clear error and its legal conclusions *de novo*. *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004) (citation omitted). We are tasked here with interpreting Maryland and federal law to decide whether the circuit court's order was legally correct. *Simbaina*, 221 Md. App. at 448 (stating that SIJ status cases require appellate courts to interpret state and federal law to decide if the circuit court order was legally correct). We do so *de novo*. *Nesbit*, 382 Md. at 72 (quoting *Walter v. Gunter*, 367 Md. 386, 392 (2002)) ("When the trial court's order 'involves interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review.'").

---

(1) Did the Court of Special Appeals err in finding no error and upholding the Circuit Court's denial of SIJ Status, even though the lower court stated that it was applying the incorrect 'clear and convincing evidence' standard of proof regarding a neglect finding, in a SIJ case?

(2) Did the Court of Special Appeals err in finding that the Circuit Court had committed no error in its findings that there was insufficient evidence to prove neglect, and therefore no neglect under the law, in the context of a SIJ case?

**Discussion**

*A. The Burden of Proof in SIJ Status Proceedings.*

We first address a novel issue for this Court, that is, the appropriate burden of proof in SIJ status cases. The Court of Special Appeals held that the preponderance of the evidence standard is the appropriate burden of proof. *Romero*, 236 Md. App. at 507. Petitioner and *Amicus* agree with that holding. For the following reasons, so do we.

To start, we commend the *Romero* court's insightful analysis on this issue. The court reached the correct result despite operating "on a blank slate," as "neither federal law nor existing Maryland law" dictates what burden of proof should apply. *Id.*

It is well established that "preponderance of the evidence [is] the standard of proof generally applicable in civil actions" in Maryland.[20] *Shurupoff v. Vockroth*, 372 Md. 639, 659 (2003); *see also Coleman v. Anne Arundel Cty. Police Dep't*, 369 Md. 108, 134 (2002); *Calvert Cty. Planning Comm'n v. Howlin Realty Mgmt., Inc.*, 364 Md. 301, 327 (2001). The standard applies in various juvenile matters, including custody disputes between a parent and a third party, *see Shurupoff*, 372 Md. at 640-41, 660; Child in Need of Assistance ("CINA") cases,

---

[20] This Court has noted that:

> "[t]o prove by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence which, when considered and compared with the evidence opposed to it, has more convincing force and produces in your minds a belief that it is more likely true than not true."

*Coleman v. Anne Arundel Cty. Police Dep't*, 369 Md. 108, 125 n.16 (2002) (quoting MPJI 1:7 (3d. ed. 2000)).

*see* Md. Code (1973, 2013 Repl. Vol.), § 3-817(c) of the Courts & Judicial Proceedings ("CJP") Article; suspension of visitation rights, *see In Re Adoption/Guardianship No. 87A262*, 323 Md. 12, 22 (1991); and custody and visitation cases involving abuse or neglect determinations, *see Volodarsky v. Tarachanskaya*, 397 Md. 291, 292-93, 308 (2007). "We see no reason why that general standard should not apply in this case," because, as explained below, "[n]o fundamental liberty interests [are] at stake," *Calvert Cty. Planning Comm'n*, 364 Md. at 328, and USCIS defers to state law on such evidentiary matters, USCIS Policy Manual, Vol. 6, Part J, Ch. 3, § A.2 ("Juvenile courts should follow their state laws on . . . evidentiary standards.").

The heightened clear and convincing standard of proof only applies in "certain limited circumstances." *See Coleman*, 369 Md. at 143. Such "limited circumstances" arise "when the government seeks to take unusual coercive action—action more dramatic than entering an award of money damages or other conventional relief—against an individual." *Id.* (citation omitted). "Unusual coercive action" can include, for example, terminating parental rights, *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982), or involuntary civil commitment, *Addington v. Texas*, 441 U.S. 418, 432-33 (1979).

No "unusual coercive action" occurs in SIJ status cases. That is because those proceedings do *not* involve any termination of parental rights; they merely entail judicial fact finding about the viability of a forced reunification between a parent and a child. *See J.U. v. J.C.P.C.*, 176 A.3d 136, 141 (D.C. 2018) ("Here, the concept of abandonment is being considered not to deprive a parent of custody or to terminate parental rights but rather to assess . . . the workability . . . of a forced reunification"); *see also* USCIS Policy Manual,

15

Vol. 6, Part J, Ch. 2, § D.2 (stating that "termination of parental rights is not required" in SIJ state court proceedings). The clear and convincing standard is thus unsuitable for SIJ status cases. Accordingly, we hold, as did the Court of Special Appeals, that in Maryland the preponderance of the evidence standard applies in SIJ status cases.[21]

*B. The Legal Standard for Abuse, Neglect, and Abandonment in SIJ Status Cases.*

Our holding above does not resolve the present matter. Instead, we are left to address the proper legal standard for identifying mistreatment in SIJ status cases, or, stated differently, what an SIJ petitioner must establish by a preponderance of the evidence to merit the requisite findings. For guidance, *amicus* refers us to two recent decisions from the District of Columbia Court of Appeals. We summarize those decisions in turn and adopt the approach set forth therein. In doing so, we incorporate much of what the Court of Special Appeals held in *In re Dany G*.

1. Recent D.C. Court of Appeals SIJ Status Decisions.

The D.C. appellate court's principal SIJ status case is *J.U. v. J.C.P.C.*, 176 A.3d 136 (D.C. 2018). In *J.U.*, a child, C.J.P.U., entered the United States as an unaccompanied and undocumented minor to join his mother in D.C. *Id.* at 138. The mother filed a complaint for sole legal and physical custody of C.J.P.U. in D.C. Superior Court. *Id.* at 140. She also filed a motion requesting that the trial court render the requisite SIJ status findings. *Id.* The mother

---

[21] We note that if the preponderance standard is appropriate for Child in Need of Assistance cases—"where a juvenile court is empowered to assume custody of a child, remove the child from his or her home, and place the child with either a public agency or another individual[,]" *Shurupoff*, 372 Md. at 657 n.3—surely the standard is also suitable in SIJ cases where judicial fact finding is all that occurs.

alleged that reunification with C.J.P.U.'s father was not viable due to abandonment. *Id.* "[T]he father agreed with all the allegations." *Id.*

Despite uncontested evidence illustrating that the father abandoned C.J.P.U. (e.g., he never provided clothes, food, shelter, care, or financial support), the trial court determined that the mother and child had "minimized" the father's role in C.J.P.U.'s life. *Id.* at 142. The court "discredited" parts of C.J.P.U.'s testimony and found that although the father "may 'not have been perfect . . . he was not . . . neglectful.'" *Id.* Consequently, even though the Superior Court granted the mother custody of C.J.P.U. and determined that it was not in C.J.P.U.'s best interest to return to El Salvador, the court denied the mother's SIJ status motion. *Id.* at 140. The mother appealed, and the D.C. Court of Appeals reversed the trial court's decision. *Id.* at 144.

In its opinion, the D.C. Court of Appeals emphasized that "the trial court applied too demanding a standard of both 'viability' and 'abandonment.'" *Id.* at 142. The appellate court explained that the proper inquiry in SIJ status cases is:

> not the abstract question [of] whether the minor has been neglected or abandoned by the [parent]. Rather, it is whether reunification with [the parent] in [the country of origin] is "viable" due to "abandonment[,]" [abuse, or neglect]. It calls for a realistic look at the facts on the ground in the country of origin and a consideration of the entire history of the relationship between the minor and the parent in the foreign country.

*Id.* at 140. The court, relying on the dictionary, defined "viable" as "common-sense practical workability" and instructed trial courts to determine whether "forced reunification" between a parent and a child was workable given "the impact of . . . the parent's past conduct." *Id.* at 140-41. Applying this standard to the facts before it, the appellate court concluded that

17

"sending a seventeen-year-old boy back to the care of a father who has never fulfilled any day-to-day role in the support, care, and supervision during the boy's lifetime cannot be a 'reunification' that is 'viable.'" *Id.* at 143. The court remanded the case to the trial court to enter an amended order with the requisite SIJ status findings. *Id.* at 144.

Months later, the District of Columbia Court of Appeals reaffirmed the standard it had established in *J.U.*, in *Benitez v. Doe*, 193 A.3d 134 (D.C. 2018). In *Benitez,* a mother filed a custody case against a man, John Doe, she believed was the biological father of her daughter, J.V.B., an undocumented minor who came to the United States to join her mother.[22] *Id.* at 135-36. The mother also sought the requisite SIJ status findings for J.V.B. *Id.* at 136. The Superior Court awarded custody to the mother and made all the relevant SIJ status findings, except one: the court found that although reunification with J.V.B.'s father was impossible, because his identity was unknown, "'no evidence [suggested] that the lack of viability [was] due to abandonment.'" *Id.* at 137. The mother appealed, and the D.C. Court of Appeals reversed. *Id.* at 137, 138-39.

The appellate court again emphasized that the trial court had applied "'too demanding a standard of . . . abandonment.'"[23] *Id.* at 138 (quoting *J.U.*, 176 A.3d at 142). The appellate court

---

[22] The mother initially filed a custody case against Walter Alvarado, but a paternity test excluded him as the father and that custody case was dismissed. *See Benitez*, 193 A.3d at 136. The mother then filed the complaint against John Doe. *Id.*

[23] The District of Columbia Court of Appeals recently reaffirmed its broad legal standard for SIJ status findings in *B.R.L.F. v. Sarceno Zuniga*, 200 A.3d 770 (D.C. 2019). *See* 200 A.3d at 776 ("When determining whether a petitioner has established a prima facie case [for SIJ status findings], the trial court must recognize that Congress to some extent has put its proverbial thumb on the scale favoring SIJS status."). Specifically, the court held that a mother committed "abandonment" under D.C. law by sending "her son away with smugglers to a

18

reiterated that "abandonment is to be interpreted broadly" and concluded that "the mother was [not] required to name J.V.B.'s father before she could prove abandonment and satisfy the requirements of the SIJ status statute." *Id.* The Court of Appeals cautioned trial courts "against imposing such insuperable evidentiary burdens on SIJ status applicants." *Id.* at 139.

2. The SIJ Status Standard in Maryland and the Role of Trial Courts in these Proceedings.

We find the cases from the D.C. Court of Appeals persuasive and hold that in SIJ status cases in Maryland, the terms "abuse," "neglect," and "abandonment" should be interpreted broadly when evaluating whether the totality of the circumstances indicates that the minor's reunification with a parent is not viable, i.e., workable or practical, due to prior mistreatment.[24] *See B.R.L.F. v. Sarceno Zuniga*, 200 A.3d 770, 777 (D.C. 2019) (stating that "all the relevant factors must be understood in the light most favorable to determinations of neglect and abandonment"). Such a holding furthers Congress's intent in creating SIJ status, *see Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221 (3d Cir. 2003), and is consistent with Maryland's public policy of protecting children, *see Attorney Grievance Comm'n v. Thompson*, 367 Md. 315, 325-26 (2001) (noting that "it is well established" that Maryland statutory and common law are designed "to protect and promote the welfare of children").

---

foreign land, at a substantial risk to his life[,]" rendering reunification with the mother "not viable" because if the boy returned to Guatemala, "his mother might well attempt a second, similar abandonment." *Id.* at 777-78.

[24] We refrain from deciding herein what other "similar basis" under Maryland law may justify SIJ status findings, but we recognize that the TVPRA inserted the "similar basis" language into the SIJ status statute, *see* 8 U.S.C. § 1101(a)(27)(J), to "allow for expansion of [the] protected grounds beyond those of abuse, neglect, and abandonment." *See In re Dany G.*, 223 Md. App. at 718 n.6.

19

In applying this standard, circuit courts should consider factors such as (1) the lifelong history of the child's relationship with the parent (i.e., is there credible evidence of past mistreatment); (2) the effects that forced reunification might have on the child (i.e., would it impact the child's health, education, or welfare); and (3) the realistic facts on the ground in the child's home country (i.e., would the child be exposed to danger or harm). *See J.U.*, 176 A.3d at 140 (listing factors for trial courts to consider in SIJ status cases). This is not an all-encompassing list. Trial courts may consider other factors based on the evidence and testimony before the court, but such factors must relate to the ultimate inquiry of whether reunification is viable.

In so holding, we reiterate what our colleagues on the Court of Special Appeals have observed: trial judges are *not* gatekeepers tasked with determining the legitimacy of SIJ petitions; that is exclusively the job of USCIS. *See Simbaina*, 221 Md. App. at 458-59 (citation omitted) (noting that state courts are "'not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent'"); *see also Benitez*, 193 A.3d. at 139 ("[I]t is not the trial court's duty. . . to determine whether a petitioner for SIJ status is 'bona fide.'"). Trial judges should not step in for, or act on behalf of, an unrepresented party. Nor should they impose insurmountable evidentiary burdens on SIJ petitioners. *Benitez*, 193 A.3d. at 139; *see also In Re Dany G.*, 223 Md. App. at 715 ("Congress established the requirements for SIJ status knowing that those seeking the status would have limited abilities to corroborate testimony with additional evidence.").

That said, trial judges should not abdicate their responsibility as fact finders; judges should assess witness credibility and discredit evidence when warranted. *See In re J.J.X.C.*, 734 S.E.2d 120, 124 (Ga. 2012) (stating that juvenile courts are "authorized to conclude that the petitioners failed to present evidence to support the SIJ factors or that their evidence was not credible"). But they must do so with caution because "creation of contrary evidence [often] rests on surmise[,]" particularly in uncontested cases. *See J.U.* 176 A.3d. at 141 n.9. Moreover, all evidence in SIJ status cases is "made under penalty of perjury and would appear to have some presumptive validity." *Id.*

3. Application to the Present Case.

We now turn to how this standard applies in the present matter. In doing so, we express our agreement with the Supreme Court of New Jersey that, in SIJ status cases, Maryland courts are to apply Maryland law, and not the law of the child's home country. *H.S.P. v. J.K.*, 121 A.3d 849, 859 (N.J. 2015) ("The plain language of [the SIJ statute] requires New Jersey courts to apply New Jersey law, and not that of an alien's home country, when determining whether a juvenile has been abused, neglected, or abandoned."). We reach this conclusion based on the plain language of the SIJ statute and the federal government's interpretations of its provisions. *See Canales v. Torres Orellana*, 800 S.E.2d 208, 220 (Va. Ct. App. 2017) ("[B]y its express terms, 8 U.S.C. § 1101(a)(27)(J)(i) contemplates that state courts apply state law."). The plain language of 8 U.S.C. § 1101(a)(27)(J)(i) requires proof that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found *under State law*[.]" (Emphasis added). The terms "abuse," "neglect," and "abandonment" are left undefined because, as the Department of Homeland Security explains, the "[s]pecific legal

21

definitions of [those] terms . . . derive from State law." Special Immigrant Juvenile Petitions, 76 Fed. Reg. 54978, 54980 (proposed Sept. 6, 2011) (hereinafter, "DHS Proposed Regulations") (to be codified at 8 C.F.R. §§ 204, 205, 245); *see also* USCIS Info for Juvenile Courts ("The role of the [juvenile] court is to make factual findings *based on state law* about abuse, neglect, or abandonment[.]") (emphasis added). The terms derive from state law because "[d]etermining the viability of reunification . . . is a question that lies within the expertise of the juvenile court, applying relevant State law." DHS Proposed Regulations at 58980; *see also H.S.P.*, 121 A.3d at 859 (citation omitted) ("'The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests.'").

In rendering SIJ status findings, therefore, "trial judges are to determine whether the child would be considered abused, neglected, or abandoned under Maryland law without regard to where the child lived" when the mistreatment occurred. *In re Dany G.*, 223 Md. App. at 718. This holding—that state courts should not apply "a hybrid of the law of a single American state superimposed on the living conditions of another country," *id.* at 717—appears to be consistent with the position of other jurisdictions and experts in this area of the law. *See In re Domingo C.L.*, No. M2016-02383-COA-R3-JV, slip. op. at 4, 8-9 (Tenn. Ct. App. Aug. 30, 2017) (adopting the standard articulated in *In re Dany G*); *see also Guardianship of Penate*, 76 N.E.3d. 960, 968-69 (Mass. 2017) (applying Massachusetts law without considering the child's living conditions in Guatemala); *Benitez*, 193 A.3d. at 138 & n.4 (applying D.C. law without discussing the conditions in El Salvador); Rafaela Rodrigues & Leslye E. Orloff, *Abuse, Abandonment, or Neglect: The Role of State Law Definitions in Special Immigrant Juvenile*

*Status Findings* 3, Ch. III *in* Washington Coll. of Law, Nat'l Immigrant Women's Advocacy Project, *Special Immigrant Juvenile Status Bench Book: A National Guide to Best Practices for Judges and Courts* (Leslye E. Orloff & Rafaela Rodrigues eds., 2018), https://perma.cc/VD7Y-K7QA ("State law applies to [the] facts of the case wherever in the world those facts took place. When the . . . neglect . . . occurred abroad, state court judges are to apply their state's . . . neglect definition[] . . . to the facts that took place outside of the United States."). *But see In re S.A.R.D.*, 182 So.3d 897, 903-05 (Fla. Dist. Ct. App. 2016) (highlighting a child's poverty situation in Honduras to explain why the minor failed to satisfy the "willfulness component" of "neglect" under Florida's dependency statutes). We agree with Judge Friedman, writing for Court of Special Appeals in *In re Dany G.*, that if Congress had intended to "require knowledge of living conditions in other countries, surely federal immigration judges[, who deal with such matters regularly,] would have been a far more appropriate selection." 223 Md. App. at 718.

The ultimate inquiry here, therefore, is whether R.M.P.'s reunification with Perez is not viable because Perez's prior conduct constituted neglect under Maryland law. *Id.* at 720; *see also J.U.*, 176 A.3d. at 141 (stating that neglect is "being considered . . . to assess the impact of the . . . parent's past conduct on the viability . . . of a forced reunification of parent with minor."). Under Maryland law, "neglect" is defined as "leaving . . . a child unattended or other failure to give proper care and attention to a child by any parent . . . under circumstances that indicate . . . that the child's health or welfare is harmed or placed at substantial risk of harm." CJP § 3-801(s); FL § 5-701(s). The labor Perez forced R.M.P. to endure—unsupervised logging in mountainous terrain surrounded by poisonous snakes—satisfies that definition. *See In Re Dany G.*, 223 Md. App. at 721 (noting that in Maryland, if a child works "under dangerous

conditions, a finding of neglect would surely follow"). Notably, while laboring in such conditions, R.M.P. sustained a physical injury that Perez ignored. Moreover, the forced labor commenced when R.M.P. was merely 10 years old. In Maryland, absent certain exceptions inapplicable here, it is illegal for a child under the age of 14 to work. *See* Md. Code (1991, 2016 Repl. Vol.), §§ 3-203, 3-209 of the Labor & Employment Article. Based on these unrefuted facts, viewed through the prism of Maryland law, we conclude that returning R.M.P. to the custody of a mother who inadequately cared for and supervised him "cannot be a reunification that is viable." *J.U.*, 176 A.3d. at 143.

In reaching the opposite conclusion, the circuit court applied a far too demanding and rigid standard. *See id.* at 142. Rather than broadly assessing whether Perez's behavior rendered reunification with R.M.P. unworkable, the circuit court conducted a narrow analysis of whether Perez was neglectful in a technical sense. The court questioned, for example, whether Perez's failure to obtain medical care for R.M.P. was a valid parental "judgment call." The court challenged the veracity of R.M.P.'s testimony about his injury because he was able to continue working afterward, even though the uncontroverted evidence indicated that Perez forced him to do so. The court also concluded that because R.M.P. worked for his mother and still managed to attend school, no "Maryland standards" were violated. While such an exacting inquiry is appropriate in a Termination of Parental Rights hearing, it has no place in an uncontested SIJ status proceeding. The circuit court's order—and consequently, the Court of Special Appeals' decision affirming that order—was therefore legally incorrect. Accordingly, we vacated both decisions in our December 7, 2018, order and required the circuit court to issue an amended order with the requisite SIJ status findings.

24